**LOUISIANA–PACIFIC CORPORATION a Delaware corporation, Plaintiff,**

v.

**ASARCO, INCORPORATED, a New Jersey corporation, et al., Defendants/Third Party Plaintiffs.**

**PORT OF TACOMA, a municipal corporation, Plaintiff,**

v.

**ASARCO INC., a New Jersey corporation, et al., Defendants.**

**No. C88–217TB.**

United States District Court, W.D. Washington.

April 12, 1990.

James R. Verellen, Kane, Vandeberg, Hartinger & Walker, Tacoma, Wash., Joseph A. Darrell, James C. Collins, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., Bert P. Krages, II, Louisiana–Pacific Corp., Portland, Or., for Louisiana–Pacific Corp.

James J. Mason, Tacoma, Wash., Jeffrey W. Leppo, Bogle & Gates, Seattle, Wash., for Port of Tacoma.

Michael R. Thorp, Peter A. Danelo, Heller, Ehrman, White & McAuliffe, Seattle, Wash., for Asarco, Inc.

Peter Haller, Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax, Seattle, Wash., for Cascade Timber.

Jeff Belfiglio, Richard W. Elliott, Davis, Wright & Jones, Bellevue, Wash., for L–Bar Products, Inc.

Dennis S. Harlowe, Ronald B. Leighton, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Wash., for Murray Pacific Corp.

Lyman W. Hull, Howard I. Hall, George, Hull & Porter, Seattle, Wash., for U.S. Gypsum.

William L. Dowell, Walker & Dowell, Longview, Wash., James C. Hanken, Schwabe, Williamson, Wyatt & Lenihan, Seattle, Wash., for Wasser & Winters Co.

Russell Love, Patrick M. Paulich, Thorsrud, Cane & Paulich, Inc., Seattle, Wash., for Industrial Mineral Products.

Stephen E. DeForest, Riddell, Williams, Bullitt & Walkinshaw, Seattle, Wash., for Nichimen America.

Nick S. Verwolf, Davis Wright & Jones, Bellevue, Wash., for Portac.

Jeff Belfiglio, Davis, Wright & Jones, Bellevue, Wash., for L–Bar Products, Inc.

Michael Alexander Patterson, Lee, Smart, Cook, Martin & Patterson, Seattle, Wash., for William Fjetland.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT BY THIRD–PARTY DEFENDANT USG INTERIORS, INC.

BRYAN, District Judge.

THIS MATTER comes before the court on the "Motion For Summary Judgment By Third–Party Defendant, USG Interiors, Inc." ("USGI"). USGI requests a judgment of dismissal. The court reviewed the file and the pleadings filed in support of and in opposition to the motion and heard oral argument.

## I. STATEMENT OF THE CASE

This consolidated action was brought by Louisiana Pacific Corporation ("L–P") and the Port of Tacoma pursuant to section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601–9657. The U.S. Environmental Protection Agency identified the plaintiffs as potentially liable for the clean up costs on a number of sites containing hazardous substances and plaintiffs are suing the American Smelting And Refining Company ("ASARCO") for allegedly contributing to this liability. Among other things, L–P alleges that slag from the ASARCO steel mill in Ruston, Washington contained a hazardous substance which was deposited as fill material in L–P's log sort yard at the terminus of Hylebos Creek at Commencement Bay. Later, log deck scrapings ("woodwastes") from the sort yard were dumped at the B & L Landfill in Milton, Washington ("B & L"). It is alleged that this woodwaste contained ASARCO slag that had been deposited in the sort yard, and that B & L was contam-

inated primarily by this combination of AS-ARCO slag and woodwaste. The Washington Department of Ecology ("DOE"), under Washington's Toxic Control Act, RCW 70.-105B, *et seq.*, has designated B & L as a site requiring cleanup.

L–P seeks to recover from ASARCO the cost of responding to the environmental hazard at B & L. Responding to L–P's action, ASARCO brought third-party actions against numerous other parties that, ASARCO alleges, contributed to the hazard at B & L. USGI is one of these parties.

USGI produces mineral wool used as insulation. The production process involves melting raw materials, including steel mill slag, in a cupola furnace. The molten material is then drawn from the cupola, struck with a blast of air, and the material is fiberized into mineral wool. The process produces a by-product called "shot," which USGI discards. The USGI plant in Tacoma, Washington discarded approximately 7,000 cubic yards of its shot at B & L between 1978 and 1980.

B & L covers 20 acres which was a disposal site for waste materials from log sort yards. USGI's shot was used primarily to build the road into the site, but the shot became inextricably mixed with other materials deposited at the site. Approximately 420,000 cubic yards of material from all sources were deposited at B & L.

There is no evidence that the shot deposited at B & L contained ASARCO slag. The evaluations of various samples show that the shot contains extremely small concentrations of hazardous material. Because a major claim in this case is that the combination of the woodwaste with the AS-ARCO slag caused the environmental hazard at B & L, USGI places great emphasis on the relative insignificance of its shot.

Nonetheless, it appears that USGI's shot does contain hazardous material concentrations which are in excess of levels permitted by state and federal standards for certain "clean up" purposes. Therefore, scrutiny of USGI's contribution to the hazard at B & L is important.

## II. CLAIMS

USGI contends that ASARCO has failed to establish that USGI's shot caused harm to the B & L site. ASARCO contends that CERCLA does not impose on ASARCO a requirement of proving proximate cause to recover response cost.

USGI also contends that its wastes do not contain sufficient concentrations of heavy metals to qualify as "hazardous substances" under CERCLA. ASARCO maintains that CERCLA does not establish a threshold concentration or volume of hazardous substances in order to establish liability.

USGI last argues that ASARCO's claim against USGI is barred by the statutory defense provided under CERCLA when a release is caused by a third party. 42 U.S.C. § 9607(b)(3). ASARCO responds that USGI has not stated a valid "third party" defense, since USGI contributed to the release.

## III. DISCUSSION

The CERCLA statute is extensive and complicated and the language of the statute has been criticized by many courts.

> Congress enacted CERCLA in response to well-publicized toxic waste problems.... Yet, because the final version was enacted as a last minute compromise between three competing bills, it has acquired a well-deserved notoriety for vaguely-drafted provisions and an indefinite, if not contradictory, legislative history.

*Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir.1989).

Consequently, key issues in CERCLA cases can sometimes be obscured. The motion here centers on the elements of a cause of action in the CERCLA statute which was stated as follows in *United States v. Wade*, 577 F.Supp. 1326, 1333 (E.D.Penn.1983):

> Stripping away the excess language, the statute appears to impose liability on a generator who has (1) disposed of its hazardous substances (2) at a facility which now contains hazardous substances of the sort disposed of by the generator (3) if there is a release of that

or some other type of hazardous substance (4) which causes the incurrence of response costs.

42 U.S.C. § 9607.

The parties do not, in this motion, contest the fact that the B & L site is a "facility" as defined in section 9601(9)[1], which now contains "hazardous substances" as defined in section 9601(14)[2]. They also appear not to contest here that there has been a "release"[3] of some type of hazardous substance at B & L and that "response[4] costs" have been incurred.

However, the parties do differ on whether USGI's shot constitutes a "hazardous substance," on what constitutes a "release" by USGI, and on how the word "causes" should be construed.

## A. HAZARDOUS SUBSTANCE

■ Although USGI argues that its shot contains extremely small concentrations of

hazardous material, CERCLA fails to impose any quantitative requirement on what constitutes a "hazardous substance." *Amoco* at 669. Therefore, since the shot contained some amount of hazardous material, under CERCLA the shot is a hazardous substance. Since USGI deposited its shot at B & L, two elements of the statute are satisfied: USGI "(1) disposed of its hazardous substances (2) at a facility which now contains hazardous substances of the sort disposed of by [USGI]." *Wade* at 1333.

## B. RELEASE

■ CERCLA also imposes no quantitative requirement on the term "release." *Amoco* at 669. The DOE found that there was a release of a hazardous substance at B & L. Therefore, the third element of the statute is satisfied regardless of the amount of release and the type of hazard-

---

1. Facility is defined as "(A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel." 42 U.S.C. § 9601(9).

2. Hazardous Substance is defined "(A) any substance designated pursuant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C. § 6901 *et seq.*] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic

gas usable for fuel (or mixtures of natural gas and such synthetic gas)." 42 U.S.C. § 9601(14).

3. Release is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substances or pollutant or contaminant), but excludes (A) any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons, (B) emissions from the engine exhaust of a motor vehicle, rolling stock, aircraft, vessel, or pipeline pumping station engine, (C) release of source, byproduct, or special nuclear material from a nuclear incident, as those terms are defined in the Atomic Energy Act of 1954 [42 U.S.C. § 2011 *et seq.*], if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under section 170 of such Act [42 U.S.C. § 2210], or, for the purposes of section 9604 of this title or any other response action, any release of source byproduct, or special nuclear material from any processing site designated under section 7912(a)(1) or 7942(a) of this title, and (D) the normal application of fertilizer." 42 U.S.C. § 9601(22).

4. Response is defined to mean "remove, removal, remedy, and remedial action, all such terms (including the terms 'removal' and 'remedial action') include enforcement activities related thereto." 42 U.S.C. § 9601(25).

ous substance, "(3) if there is a release of ... some ... type of hazardous substance." *Wade* at 1333.

## C. CAUSATION

██ CERCLA, however, does appear to provide a threshold for liability when it comes to "cause." Section 9607(a)(4) attaches liability when a release "causes the incurrence of response costs." Interpretation of the term "causes" is therefore of central significance here.

CERCLA does not *eliminate* a common law causation standard, but rather it *reduces* the causation standard. This has been articulated as follows:

> CERCLA does not set out an express standard of causation. Nevertheless, [the] structure of CERCLA and its legislative history make it clear that traditional tort notions, such as proximate cause, do not apply. Moreover, the practical limits on analytic techniques argue for a weaker causation standard.... Thus, CERCLA requires only a relaxed standard of causation.

*United States v. Bliss,* 667 F.Supp. 1298, 1309 (E.D.Mo.1987).

There is a distinction between "causing a release" and "causing response costs." In other words, liability does not attach because the defendant caused "a release," but because it caused "response costs." While a defendant may often cause both, it is the causing of response costs that subjects a party to liability under CERCLA. 42 U.S.C. §§ 9607(a)(3) and (4).

A recent case dealing with the issue of causation is *Dedham Water Co. v. Cumberland Farms Dairy, Inc.,* 889 F.2d 1146 (1st Cir.1989). The *Dedham* court held that the only causation that is required is that the defendant's release, or threatened release, caused the plaintiff to incur response costs. *Id.* at 1152.

The latest authority on the causation issue is *Amoco Oil v. Borden,* 889 F.2d 664 (5th Cir.1989). The *Amoco* court addressed quantification and expressly rejected the notion that liability attaches upon the release of any specific quantity of hazardous substance. The court did so because otherwise it "would permit CERCLA's reach to exceed its statutory purposes by holding parties liable who have not posed any threat to the public or environment." *Id.* at 670.

The court went on to say:

> Accordingly, we find use of a standard of justification acceptable for determining whether a release or threatened release of a hazardous substance has caused the incurrence of response costs. In the absence of any specific direction from Congress, we believe that the question of whether a release has caused the incurrence of response costs should rest upon a factual inquiry into the circumstances of a case and the relevant factual inquiry should focus on whether the particular hazard justified any response actions.

*Id.* at 670.

Therefore, the relevant factual inquiry here should focus on whether the shot deposited by USGI at B & L justified any response actions. ASARCO provides evidence that the USGI shot found at B & L may have exceeded the concentration levels of the clean up standards set by the Safe Drinking Water Act, 42 U.S.C. § 300f, *et seq.,* the Clean Water Act, 33 U.S.C. § 1251, and, possibly, some more stringent State standards. Such evidence, if proved at trial, would satisfy the fourth element of the statute. ASARCO has at least raised a fact question on whether USGI has "(4) ... cause[d] the incurrence of response costs." *Wade* at 1333.

The *Amoco* court held that "a plaintiff who has incurred response costs meets the liability requirement as a matter of law if it is shown that any release violates or any threatened release is likely to violate any applicable state or federal standard, including the most stringent." *Id.* at 671. USGI may not have caused the release of the hazardous substances at B & L that led to the instigation of this lawsuit. The concentration levels of hazardous materials in the shot that USGI deposited at B & L may be below what some government agencies consider to be hazardous. Nevertheless, since ASARCO has offered evidence that the

USGI shot deposited at B & L may threaten a release that is likely to violate an applicable state or federal standard and thereby incur response costs, CERCLA liability may attach and a summary judgment of dismissal would be inappropriate.

### D. THIRD PARTY DEFENSE

■ CERCLA provides a defense if "the release or threat of release of a hazardous substance and damages resulting therefrom were caused solely by ... (3) an act or omission of a third party ..." 42 U.S.C. § 9607(b)(3). Since USGI deposited its shot at B & L, and that act may have contributed to the contamination at B & L, even minimally, the defense is unavailable to USGI. The release or threat of release must have resulted *solely* by the act of a third party for USGI to succeed with this defense.

### IV. CONCLUSION

Summary judgment is not appropriate under Fed.R.Civ.P. 56(c), unless the evidence in the record shows no genuine issue of material fact. *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626 (9th Cir.1987); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985). A genuine dispute over a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

ASARCO raises genuine issues of material fact on several issues. Evidence is provided that USGI (1) disposed of material that may be deemed a hazardous substance (2) at a facility which now contains material of the sort disposed of by USGI. There is evidence (3) that a release of some type of hazardous substance has occurred at the facility in question and that USGI has (4) caused the incurrence of response costs. Since a reasonable fact finder could find for ASARCO on this evidence, a summary judgment of dismissal is inappropriate.

It is, therefore,

ORDERED that third-party defendant United States Gypsum Interior's Motion for Summary Judgment is DENIED.