## STATE of ARIZONA and City of Phoenix, Arizona, Plaintiffs,

### v.

## MOTOROLA, INC., et al., Defendants.

### Nos. CIV 89–1700–PHX–CAM, CIV 91–0237–PHX–CAM and CIV 91–0349–PHX–CAM.

United States District Court, D. Arizona.

Sept. 17, 1991.

See also 139 F.R.D. 141.

Karen L. Peters, Christopher D. Thomas, Mark E. Freeze, Squire, Sanders & Dempsey, M. James Callahan, H. Paul Graves, Asst. City Attys., Phoenix, Ariz., for plaintiff City of Phoenix.

Linda J. Pollock, Asst. Atty. Gen., Office of Arizona Atty. Gen., Phoenix, Ariz., for plaintiff State of Ariz.

Dan M. Durrant, G. Sonny Cave, Streich Lang, Phoenix, Ariz., for defendant Allied–Signal, Inc.

## MEMORANDUM and ORDER

MUECKE, District Judge.

Having considered the oral argument presented to the Court and the briefing filed with regard to the parties' cross-motions for summary judgment, the Court concludes as follows:

## INTRODUCTION

In October 1989, the Arizona Department of Environmental Quality [1] ("ADEQ") and the City of Phoenix ("City") filed suit against sixteen separate defendants, seeking to recover approximately $54 million in cleanup costs incurred or to be incurred as a result of the toxic wastes found at the 19th Avenue Landfill in Phoenix. Plaintiffs seek to recover the cleanup costs pursuant to the Comprehensive Environmental Response, Compensation and Liability Act as amended by the 1986 Superfund Amendments and Reauthorization Act (collectively "CERCLA"). 42 U.S.C. §§ 9601 *et seq.*

Plaintiffs' motion seeks a declaration that defendant Allied–Signal "arranged for" the disposal of hazardous substances at the 19th Avenue Landfill within the meaning of § 107(a)(3) of CERCLA. Allied–Signal cross-moves for a determination that, as a matter of law, its "grinding sludge" is not a "hazardous substance" within the meaning of CERCLA.

## BACKGROUND

Allied–Signal is a Delaware corporation with its principal place of business in New Jersey, also doing business in Arizona. In September 1987, Allied–Signal merged with The Garrett Corporation ("Garrett"), which had previously operated in Phoenix under the names Garrett Engine Division ("Garrett Engine"), Garrett Turbine Engine Company, and AiResearch Manufacturing Company of Arizona ("AiResearch").

Between 1951 and 1979, Garrett Engine operated a manufacturing facility at 111 South 34th Street in Phoenix (the "34th Street Facility"), which manufactured aircraft components and turbine engines for commercial applications. Between 1968 and 1979, Garrett Engine operated an aircraft engine repair and overhaul facility at 2635 South 24th Street in Phoenix (the "24th Street Facility").

Allied–Signal handled substances that constituted or contained CERCLA hazardous substances in its Phoenix, Arizona operations between 1951 and 1979. From 1951 through 1979, Allied generated wastes at its 34th Street Facility including metal grinding sludge, solvents, paint wastes, and metal plating wastes. From 1968 through 1979, Allied generated wastes at its 24th Street Facility including metal grinding sludge, solvents and paint wastes.

Metal "grinding sludge" is and was generated by Allied in connection with the grinding of metal engine components, such as gears, by a grinding machine. The chemical and metallurgical composition of the metal grinding sludge generated at the Allied 34th Street and 24th Street Facilities has remained essentially the same from the 1950s to the present, aside from minor percentage changes of metallic components.

According to plaintiffs, Allied's grinding sludge is and was composed of either hydraulic oil or water-based coolant and vari-

---

**1.** In July 1990, the State of Arizona was substituted as plaintiff for ADEQ. All references to plaintiffs include the State of Arizona and the City of Phoenix.

ous metal grinding particles including arsenic, cadmium, chromium, copper, lead, nickel, silver, and zinc. Arsenic, cadmium, chromium, copper, lead, nickel, silver, and zinc are designated as "hazardous substances" under CERCLA § 102(a), 42 U.S.C. § 9602(a). *See* 40 C.F.R. § 302.4 (Table 302.4). According to Allied–Signal, "the 'grinding sludge' is composed, in its entirety, of small pieces of metal alloys, particles of diatomaceous earth, and small amounts of either an oil or water-based liquid." Allied's Cross–Motion, at 9.

The Toxicity Characteristic Leaching Procedure ("TCLP") was developed by the United States Environmental Protection Agency ("EPA"), pursuant to the Resource, Recovery and Conservation Act ("RCRA"), to determine the leaching potential of wastes that may pose a threat to human health and the environment from a given sample of waste material. *See* 55 Fed.Reg. 11,798–862 (March 29, 1990). The Extraction Procedure Toxicity Characteristic ("EP Tox") is another EPA approved test that also measures toxicity pursuant to RCRA. *Id.* at 11,800. Under the TCLP test, chromium, copper, lead, nickel, silver, sodium and zinc are identified as part of Allied's grinding sludge. Under the EP Tox test, Allied's grinding sludge was determined to contain chromium, nickel and zinc. Chromium, copper, lead, nickel, silver, sodium and zinc are all "hazardous substances" under CERCLA. *See* 40 C.F.R. § 302.4 (Table 302.4).

Throughout the period that the 19th Avenue Landfill was in operation Allied disposed of its metal grinding sludge in a waste container at the 34th Street Facility, where it was allowed to settle and then transported offsite in a garbage truck. Throughout the period that the Landfill was in operation Allied disposed of chemical containers from its plating department in its ordinary trash.

From 1977 until the Landfill closed in 1979, Allied contracted with Universal Waste Control (now Waste Management of Arizona) for waster hauling services. Universal Waste Control transported Allied–Signal's wastes to the 19th Avenue Landfill from 1977 through 1979.

## DISCUSSION

Allied–Signal does not dispute that it is a "person" within the meaning of CERCLA § 107(a) and that the Landfill is a "facility" within the meaning of CERCLA § 101(9). Therefore, the issues to consider are as follows: (1) whether the "grinding sludge" generated by Allied–Signal is a "hazardous substance" within the meaning of CERCLA; and (2) if the grinding sludge is determined to be a hazardous substance, whether the sludge or any other hazardous substance was transported and disposed of at the 19th Avenue Landfill.

Congress enacted CERCLA in response to well-publicized toxic waste problems that threaten the public health and the environment. *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 667 (5th Cir.1989). Through CERCLA Congress addressed the serious toxic waste situation that currently exists in this country. Through CERCLA Congress gave the federal government the tools necessary for a prompt and effective response to the situation. In addition, "Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs of remedying the harmful condition they created." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986). CERCLA encourages early settlement in order to provide funds to remedy the harmful conditions and preserve the public health:

CERCLA was designed "to protect and preserve public health and the environment." That Congressional purpose is better served through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation. Without question, Congress passed the SARA amendments to encourage settlements for this very reason.

*In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollu-*

*tion,* 712 F.Supp. 1019, 1028–29 (D.Mass. 1989) (citations omitted).[2]

The United States Environmental Protection Agency ("EPA") is primarily responsible for undertaking the cleanup of hazardous substances. 42 U.S.C. § 9604(a)(1). The EPA, among other things, conducts investigations and determines the risks to public health and the environment. *Id.*

### I. *Standard of Review*

■ A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rules of Civil Procedure, Rule 56(c). The party seeking summary judgment bears the initial responsibility of showing the absence of a genuine issue for trial. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party must provide to the court a statement of specific uncontroverted facts, separate from its motion for summary judgment, on which it bases its motion. District of Arizona, Local Rule 11(*l*)(1). The moving party need not present affidavits or other materials negating the opponent's claims, but need only inform the court of the basis of its motion and indicate those portions of the pleadings and any other evidentiary matter listed in Rule 56(c) that support its contention that no genuine issue of fact exists. *Celotex,* 477 U.S. at 323–324, 106 S.Ct. at 2553. The moving party must cite specifically the portion of the record where the court can find the particular facts supporting its motion. District of Arizona, Local Rule 11(*l*)(1).

■ To defeat the motion, the party opposing summary judgment must establish that a genuine issue of fact exists with respect to any element for which it bears the burden of proof at trial. *British Motor Car Distributors, Ltd. v. San Francisco Automotive Industries Welfare Fund,* 882 F.2d 371, 374 (9th Cir.1989). The opposing party may not merely rely on the assertions and allegations of the pleadings, but instead must set forth specific facts showing a genuine issue for trial. Federal Rules of Civil Procedure, Rule 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Like the moving party, the party opposing the motion must direct the court's attention to where those facts appear in the pleadings, affidavits, and other evidentiary matter used to support the opposition; merely citing the record without designating where the fact is stated is not sufficiently specific. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988). If the opposing party does not respond in the manner specified in Rule 56(e), summary judgment will be granted. Federal Rules of Civil Procedure, Rule 56(e).

### II. *Whether the "Grinding Sludge" is a Hazardous Substance within the Meaning of CERCLA.*

■ CERCLA defines "hazardous substance" as:

(A) any substance designated pursuant to section 311(b)(2)(A) of [Title 33], (B) any element, compound, mixture, solution or substance designated pursuant to section 9602 of this title, (C) any haz-

---

**2.** CERCLA provides two incentives for settlement. First, § 113(f)(2), added by SARA, provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). This protection against contribution allows settling parties to pay their agreed settlement and end their involvement in costly litigation without "fear that a later contri-

bution action will compel them to pay still more money to extinguish their liability." *Acushnet,* 712 F.Supp. at 1027.

Second, under CERCLA, even "if the settlor pays less than its proportionate share of liability, the non-settlors, being jointly and severally liable, must make good the difference." *Id.* This risk of disproportionate liability encourages parties to resolve their liability early, lest they be found responsible for amounts not paid by settling defendants.

ardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] ... (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act ... and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15.... The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel....

42 U.S.C. § 9601(14). A material that is *not* hazardous waste under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.,* may still be considered a hazardous substance under CERCLA. *United States v. Farber,* 27 Env't Rep. Cases (BNA) 1978, 1980–81, 1988 WL 25427 (D.N.J.1988) (Congress consciously chose the more comprehensive term "substance" over the term "waste" so that the President would be able to respond to a broader range of environmental problems); *United States v. Conservation Chemical Co.,* 619 F.Supp. 162, 222 (D.C.Mo.1985) (fact that a substance is not a RCRA hazardous waste does not mean it is not a CERCLA hazardous substance). ■■■ CERCLA does not impose any quantitative requirement on what constitutes a "hazardous substance." *Amoco Oil Co.,* 889 F.2d at 669–70; *Louisiana–Pacific Corp. v. ASARCO, Inc.,* 735 F.Supp. 358, 361 (W.D.Wash.1990) ("CERCLA fails to impose any quantitative re-

quirement on what constitutes a 'hazardous substance.' "); *Hassayampa Steering Committee v. Arizona,* 32 Env't Rep. Cases (BNA) 1385, 1391, 1989 WL 248273 (D.Ariz.1989) (a waste is a hazardous substance if it contains substances listed as hazardous under any of the statutes listed in Section 101(14), regardless of the volume or concentration of those substances). A waste material that is not specifically listed as a hazardous substance in 40 C.F.R. § 302.4 (the EPA's designation of CERCLA hazardous substances pursuant to 42 U.S.C. § 9602) is nonetheless hazardous under CERCLA if it *contains* CERCLA hazardous substances. *Eagle–Picher Industries, Inc. v. United States E.P.A.,* 759 F.2d 922, 930–31 (D.C.Cir.1985); *State of Idaho v. Bunker Hill Co.,* 635 F.Supp. 665, 673 (D.Idaho 1986); *United States v. Carolawn,* 21 Env't Rep. Cases 2124, 2126 (D.S.C.1984) ("If a waste material contains hazardous substances, then the waste material itself is a hazardous substance for purposes of CERCLA.").[3]

The grinding sludge is composed of no more than four types of alloys used by Allied–Signal in its manufacturing operations. According to Allied, the resulting metal alloy will not break down into its constituent elements under any natural conditions. Allied's Cross–Motion, at 10. This is because "[a]n alloy is, by definition, a *permanent* combination of a metal element that is *physically bonded* together with one or more other elements to form an entirely new and distinct substance." *Id.* at 9 (emphasis in original).

Allied's grinding sludge is not listed as a hazardous substance under CERCLA. *See* 40 C.F.R. § 302.4 (Table 302.4). Allied argues that since the sludge is not listed in Table 302.4, it may not be considered a hazardous substance unless it "exhibits

---

**3.** CERCLA's legislative history also indicates that the listing of a substance as hazardous, not its concentration or amount, is sufficient to designate a substance as hazardous:

[S]ubstances listed as hazardous or toxic under certain other Federal laws are incorporated by reference and upon the date of enactment of this bill such substances become statutorily defined as hazardous substances for purposes of this bill. And the release of any

of them or any constituent of them invokes the ... response provisions and any costs of removal or remedial action or any damages are subject to the liability provision of the bill.... As substances are added to [the] lists they would be automatically designated as hazardous substances.

Senate Rep. No. 96–848, 96th Cong., 2d Sess. at 24–27 (July 13, 1980).

any of the characteristics identified in 40 C.F.R. 261.20 through 261.24." Allied's Cross–Motion, at 10, citing 40 C.F.R. § 302.4(b). These regulations, according to Allied, incorporate the standards "established under RCRA, which identify four characteristics of hazardous waste—corrosivity, toxicity, ignitability, or reactivity— and specify tests to determine whether a given waste exhibits one or more of these characteristics." *Id.*

That Allied's grinding sludge is not listed in Table 302.4 is not determinative for, as previously noted, Allied's grinding sludge must be evaluated on the basis of what it contains; if a waste material contains a hazardous substance—regardless of the volume or concentration—then the waste itself is hazardous for purposes of CERCLA. *Carolawn,* 21 Env't Rep. Cases at 2126. The application of 40 C.F.R. § 302.- 4(b) is limited, in this Court's view, to a situation where the waste *and* its constituents are not listed in Table 302.4. This view is consistent with CERCLA's broad remedial statutory scheme and its imposition of strict liability.

Indeed, courts have rejected arguments such as the one presented by Allied. In *City of New York v. Exxon,* 766 F.Supp. 177 (S.D.N.Y.1991), defendant argued that its waste oil emulsion was not a CERCLA hazardous substance because (1) neither the emulsion nor the specific compounds in the emulsion were listed in Table 302.4 and (2) the emulsion did not meet any of the criteria for RCRA hazardous characteristics referenced to in 40 C.F.R. § 302.4(b). *Id.* at 181. In *Exxon,* the court held that the compounds in defendant's waste, although not listed themselves, *contained* listed hazardous substances. The *Exxon* Court stated:

> ... [T]here is no requirement that a hazardous waste listed in Table 302.4(a) exhibit any of the characteristics, identified in 40 C.F.R. 261.20–261.24, .... Because the constituents of [defendant's] waste

are "listed hazardous substances" under 40 C.F.R. § 302.4(a), it is not necessary to consider Section 302.4(b) and its provisions for determining whether an unlisted hazardous waste is hazardous.

*Id.* at 184.[4]

Similarly, in *United States v. Alcan,* 755 F.Supp. 531 (N.D.N.Y.1991), the Court rejected defendant's argument that its waste oil emulsion was not a CERCLA hazardous substance because the concentrations of CERCLA-hazardous substances of cadmium, chromium, copper, lead, and zinc in the emulsion were "less than background." The Court stated:

> [Defendant] seeks to have this Court read into the statutory scheme (1) a requirement that in order for the listed substances to be deemed "hazardous" these substances must be present in a certain amount or concentration and (2) a requirement that the listed substance be present in a "harmful" form, after all, defendant argues, several of these substances and many listed by the EPA occur naturally and are even essential to the continued existence of life ... [S]uffice it to say that the court will not rewrite the statutory and regulatory scheme to suit defendant's needs and desires.... [T]he mere listing of an element, compound or hazardous waste establishes that a substance is hazardous as a matter of law is a holding supported by courts that have considered the definitional requirements of the term and the congressional comments contained in the legislative history.... [citations omitted].

*Id.* at 536–37; *see United States v. Nicolet, Inc.,* 712 F.Supp. 1205, 1207 (E.D.Pa.1989) ("as long as a substance is on one or more of the lists identified at 42 U.S.C. § 9601(14), it is a hazardous substance irrespective of the volume or concentration of the substance found at the site in question").[5]

"CERCLA's broad, remedial concern for releases into any environmental media." *Id.* at 184–85.

4. The *Exxon* Court further rejected the claim that only "soluble metals" should be categorized as hazardous substances, since RCRA toxicity considers only groundwater and does not share

5. While the Court need not make a decision as to the applicability of the Total Metals, it should

Allied argues that there is no authority for using the TCLP and EP Tox tests results as a basis for determining whether a waste contains a CERCLA hazardous substance. Allied's Supplemental Reply, at 6. Allied's argument on this point is unpersuasive. First, Allied provided no authority that prevents application of TCLP and EP Tox test results to establish whether a particular waste contains a CERCLA hazardous substance. Second, given that the EP Tox and TCLP tests—both approved by the EPA—replicate leaching conditions at municipal landfills, it is difficult to conceive of a more appropriate mechanism by which to determine whether a particular waste contains a CERCLA hazardous substance. Finally, overwhelming authority, CERCLA's broad remedial purposes and its imposition of strict liability make it clear that it is not necessary to determine whether regulatory levels have been exceeded for purposes of the TCLP and the EP Tox tests. There is simply no quantitative requirement under CERCLA.

Under Allied's theory, the standard whether a particular material was hazardous under CERCLA would be dictated by RCRA. However, as noted earlier, the fact that a waste is not hazardous under RCRA does not prevent it from being found to be hazardous under CERCLA. *Farber*, 27 Env't Rep. Cases at 1980–81; *Conservation Chemical Co.*, 619 F.Supp. at 222. Indeed, plaintiffs do not dispute that the grinding sludge is *not* a RCRA "hazardous waste." Plaintiffs' Response to Allied's Cross–Motion, at 3. That the grinding sludge "passed" the TCLP test

does not mean that it contains no CERCLA hazardous substances, or that the hazardous substances are incapable of being released; it simply means that the hazardous constituents of the sludge leached out in concentrations lower than RCRA thresholds, and that the sludge is not a RCRA characteristic hazardous sludge.[6] As plaintiffs' stated, "[s]ince volume and concentration are irrelevant in determining whether materials are CERCLA hazardous substances, the fact that the sludge 'passed' the test for purposes of RCRA means nothing in making the determination that the sludge contains CERCLA hazardous substances." Plaintiffs' Response to Allied's Cross–Motion, at 9.

It is undisputed that the elemental metals which comprise the alloys in Allied's grinding sludge are hazardous substances under CERCLA. Allied's argument that the metals have somehow been bound together in such a way that it causes them to lose their status as CERCLA hazardous substances is contrary to law and makes no sense because CERCLA does not distinguish hazardous substances on the basis of quantity of concentration. In short, the Court finds that Allied's grinding sludge is "hazardous waste" within the meaning of CERCLA.

Allied also argues that whether the grinding sludge is hazardous should not be evaluated by "what it contains," but on the form in which it was disposed *and* whether the form will "leach" into the environment. Allied's Reply, at 2–5. Allied further argues that in order for the grinding sludge to "contain" hazardous substances, plain-

---

be noted that Allied's suggestion—notwithstanding the applicable test—that a finding that the grinding sludge is hazardous would make "everyday materials" hazardous under CERCLA is unpersuasive.

That various listed substances are naturally found in the environment (i.e., in the normal course of events) does not stand in the way of imposing liability against a generator of that substance—the corporate generator, a non-natural person, has added to what nature has already seen fit to provide for the continued existence of various life forms on this planet; that Congress has enacted laws to limit, and perhaps limit quite severely, additions to nature for the sake of the environment and of

life on this planet seems eminently reasonable.
*Alcan*, 755 F.Supp. at 538.

6. Indeed, the EPA has acknowledged that the RCRA thresholds are not entirely protective of human health:

Individual wastes may continue to be hazardous, despite the fact that they may contain TC constituents in concentrations below the regulatory levels. This is particularly true for wastes that have the potential to be exposed to more aggressive leaching conditions than those modeled in the TCLP.

55 Fed.Reg. 11,798, 11,828 (March 29, 1990).

tiffs must demonstrate that the hazardous substances would be released from the sludge under conditions that exist at the 19th Avenue Landfill, and that plaintiffs have failed to make such a demonstration. *Id.* at 3–9.

Although Allied does not dispute that the metals which comprise the alloys in their grinding sludge are CERCLA hazardous substances, it nonetheless argues that the metal alloys in the grinding sludge will not break down into their constituent elements when placed in landfills such as the 19th Avenue Landfill. Allied's argument is premised on the notion that the metals are immutably forged into a *new*, non-hazardous substance that does not break down when placed in the landfill.

Allied relies on *United States v. New Castle County*, 22 Chem. Waste Lit. Rptr. 692, 769 F.Supp. 591 (D.Del.1991), for the proposition that the constituents of an unlisted waste will render it "hazardous" only if it would "leach" or otherwise release its constituents under the conditions existing at the specific site in question. In *New Castle*, the court examined the issue of whether "Keysor's [a third-party defendant] disposal of PVC resin in the Landfill create liability under CERCLA because the PVC resin contained trace amounts of unreacted vinyl chloride." *Id.* at 696, 769 F.Supp. at 595. The parties agreed that the resin "does not depolymerize or decompose to form vinyl chloride under normal landfill conditions." *Id.* at 698, 769 F.Supp. at 597. Rather, vinyl chloride could be removed from the resin if the resin was heated in a vacuum. *Id.* at 698 & 699, 769 F.Supp. at 597 & 598. In reaching its conclusion, the *New Castle* Court stated:

> The analysis required to determine if a waste contains a hazardous substance is *distinct* from the question of release. The Court understands that a plaintiff need not establish that a given defendant's hazardous substance has been released into a CERCLA site to prove liability. However, the Court believes that if a defendant's waste is a non-hazardous substance, a plaintiff must show that the defendant's waste is *capable* of generat-

> ing or releasing a hazardous substance at the site in order to show that the defendant's waste "contains" a hazardous substance within the meaning of CERCLA.

*Id.* at 698–99, 769 F.Supp. at 597–98 (emphasis added in part).

Whereas in *New Castle*, apparently the only circumstances that would result in the release of a hazardous substance was heating of the resin in a vacuum, here it is clear that the hazardous substances will "disassociate" from Allied's grinding sludge under normal landfill conditions. Plaintiffs performed the TCLP test which is designed to simulate conditions in a normal landfill, and is considered to be an accurate predictor of the extent to which a material will "break down" and leach into the groundwater underlying the landfill. *See* 55 Fed. Reg. 11,798, 11,809. The TCLP analysis identified the following metals in Allied's grinding sludge: chromium, copper, lead, nickel, silver, sodium, and zinc. Plaintiffs' Response to Allied's Cross–Motion, SOF, at para. 4. Further, Allied–Signal itself conducted the EP Tox test on its grinding sludge and identified chromium, nickel and zinc as present in the sample. *See* Allied's SOF, at para. 22. Chromium, nickel and zinc are CERCLA hazardous substances. 40 C.F.R. Part 302.4. Thus, under the circumstances, the uncontroverted TCLP and EP Tox test results leave no doubt that Allied's grinding sludge is capable of generating or releasing hazardous substances at the Landfill.

However, this does not end the analysis because Allied goes one step further—a step that basically involves disregarding the EPA approved tests—and argues that the grinding sludge will not leach or release hazardous substances in the *19th Avenue Landfill*. The Court declines to follow the *New Castle* case to the extent that it requires a plaintiff to demonstrate that a defendant's waste is *capable* of generating or releasing a hazardous substance at the actual site. Although it is unclear whether the TCLP or the EP Tox tests were applied to material evaluated in *New Castle*, this Court will not second guess the EPA and conclude that the TCLP test is somehow not reflective of conditions at the 19th Avenue Landfill or, for that matter, all south-

western landfills. The TCLP test does not depend upon geography. Although Allied–Signal may believe that this region's arid climate makes Arizona a haven for garbage and toxic wastes, this Court will not contribute to making Arizona a dumping ground for the garbage and toxic industry.

This Court will not assume that the EPA somehow left out southwestern landfills when it developed the TCLP model. On the contrary, since courts give the EPA's interpretation of RCRA and CERCLA great weight, *see Vineland Chemical Co. v. EPA*, 810 F.2d 402, 409 (3rd Cir.1987); *Chemical Manufacturers Assoc. v. EPA*, 919 F.2d 158, 163–65 (D.C.Cir.1990); *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 891–92 (9th Cir.1986), this court should accord deference to the EPA's decision that the TCLP test reflects normal landfill conditions, including the 19th Avenue Landfill. The usefulness of the EPA-approved tests would be undermined if a court, in order to determine whether a particular material is hazardous, had to apply a geographic standard to determine whether particular substances are hazardous under CERCLA. Further, since a plaintiff need not prove that a specific release of a hazardous substance has occurred, *see United States v. South Carolina Recycling and Disposal, Inc.*, 653 F.Supp. 984, 991–92 (D.S.C.1986); *United States v. Wade*, 577 F.Supp. 1326, 1332, 1333 (E.D.Pa.1983), it would seem inappropriate to consider whether the metals will disassociate themselves from the grinding sludge. Congress surely did not intend to place this extra and rather strict hurdle in the way of improving the environmental welfare of this country.

III. *Whether the Grinding Sludge and/or Other Hazardous Substances Were Transported to the 19th Avenue Landfill.*

■ Having determined that Allied–Signal's grinding sludge is a "hazardous sub-

stance" under CERCLA, the next issue to consider is whether the sludge and/or other hazardous substances were transported to the 19th Avenue Landfill.

The liability scheme[7] under CERCLA requires, among other things, that a party fall within at least one of four classes of "persons" enumerated in § 107(a). A party may be found to be liable if it is an (1) operator; (2) owner; (3) generator; or (4) transporter of hazardous substances. 42 U.S.C. § 9607(a)(1)–(4).

Plaintiffs' motion is based on CERCLA § 107(a)(3), which defines a "generator" as:

> any person who by contract, agreement or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person ... at any facility ...

42 U.S.C. § 9607(a)(3). *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1379–1382 (8th Cir.1989). Although the phrase "arranged for disposal" is not specifically defined by the statute, the term "disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking or placing" of any hazardous substance such that the substance "may enter the environment." 42 U.S.C. § 6903(3), 42 U.S.C. § 9601(29).

Contrary to Allied's assertion, it is undisputed that loads containing grinding sludge were taken to the 19th Avenue Landfill. Allied has admitted that loads of grinding sludge were taken to the Landfill. Plaintiffs' SOF, Exhibit 2 (Allied–Signal's answer to plaintiffs' Interrogatory No. 3(a)), at 8–9 and Exhibit 4 (Allied–Signal's response to Question No. 5 of ADEQ's CERCLA Section 104(e) information request). This Court's determination that the grinding sludge is hazardous under

---

7. To establish liability under CERCLA, a plaintiff must prove:

> (1) that the site in question is a "facility" as defined in § 9601(9); (2) that the defendant is a responsible *person* under § 9607(a); (3) that a release or a threatened release of a hazard-

ous substance has occurred; and (4) that the release or threatened release has caused the plaintiff to incur response costs.
*Amoco Oil Company v. Borden, Inc.*, 889 F.2d 664, 668 (5th Cir.1989) (emphasis supplied).

CERCLA and the undisputed fact that the grinding sludge was disposed of at the Landfill is sufficient to grant plaintiffs' motion for partial summary judgment.

However, even if the Court had not determined that the grinding sludge was hazardous waste within the meaning of CERC-LA, summary judgment would still be appropriate because it appears to be undisputed that other hazardous substances Allied generated were disposed of at the Landfill. For example, it is undisputed that a driver from Universal Waste Control picked up AiResearch waste on a daily basis and transported it to the Landfill. Plaintiffs' SOF, Exhibit 21 (Deposition of Cruz Olivas), at 30–41. The driver observed metal shavings, 55–gallon drums, glass bottles, and cartons of 5–gallon plastic jugs in the wastes he took to the Landfill. The bottles and cartons of jugs were marked with "flammable," and corrosive warning labels with skulls and crossbones. *Id.* The driver noted that after he dumped AiResearch broken bottles and jugs at the Landfill, there was a "lot of liquid" in his truck that had a strong chemical odor. "Corrosive" and "ignitable" substances are CERCLA hazardous substances. *See* 40 C.F.R. Part 302.4(b).

## CONCLUSION

The Court is convinced that Allied's grinding sludge is hazardous waste within the meaning of CERCLA. Also, it is undisputed that the grinding sludge was disposed at the 19th Avenue Landfill. Under these circumstances, Allied–Signal is a "generator" within the meaning of CERC-LA § 107(a)(3).

Based on the foregoing, IT IS ORDERED THAT:

(1) Allied–Signal's motion for partial summary judgment (Doc. # 534) is denied.

(2) Plaintiffs' motion for partial summary judgment (Doc. # 494) is granted. For the pendency of this action, it is hereby determined that defendant Allied–Signal is a person who arranged for the disposal of hazardous substances (i.e., a "generator") at the 19th Avenue Landfill within the

meaning of § 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).