**VINELAND CHEMICAL CO., INC., Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**No. 86–3157.**

United States Court of Appeals, Third Circuit.

Argued Nov. 3, 1986.

Decided Feb. 6, 1987.

---

1. In light of our choice of law holding, we need not address Bethlehem's additional contentions on appeal.

Richard A. Penna, Barry S. Neuman (Argued), Schnader, Harrison, Segal & Lewis, Washington, D.C., Franklin J. Riesenburger, Greenblatt & Riesenburger, Vineland, N.J., for petitioner.

F. Henry Habicht, II, Asst. Atty. Gen., Land and Natural Resources Div., Elliott P. Laws (Argued), U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Defense Section, Washington, D.C., Francis S. Blake, Gen. Counsel, Lisa K. Friedman, Associate Gen. Counsel, Mark S. Greenwood, Asst. Gen. Counsel, Caroline Wehling, U.S.E.P.A., Office of Gen. Counsel, Solid Waste and Emergency Response Div., Washington, D.C., for respondent.

Before SLOVITER and STAPLETON, Circuit Judges and GREEN, District Judge.*

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Vineland Chemical Company (ViChem) petitions this court to review the determination made by the U.S. Environmental Protection Agency (EPA or Agency) that ViChem had not satisfied the relevant certification requirements under the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6925(e)(2) (Supp. II 1984), and thus could no longer operate its hazardous waste disposal facility under "interim status."

We hold first that the Court of Appeals has jurisdiction to review this termination of interim status. The RCRA provision creating court of appeals jurisdiction authorizes review of permit decisions but is silent with respect to interim status terminations. 42 U.S.C. § 6976(b) (Supp. II 1984). While we find that interim status is not a permit in RCRA's statutory scheme, we hold that § 6976(b), when read in conjunction with the statutory history and the case law favoring court of appeals jurisdic-

---

* Honorable Clifford Scott Green, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

tion over petitions for review of agency action, establishes the requisite statutory basis for this court's jurisdiction.

On the merits of the petition for review, we hold that the EPA's interpretation of the statute to require certification by November 8, 1985 is reasonable and is compatible with both the statutory language and the intent of Congress, and therefore we defer to the EPA's construction. Given the EPA's interpretation of the statute, the factual determination that ViChem had failed to satisfy the certification requirements was supported by the record and was neither arbitrary nor capricious.

## I.

Vineland Chemical Company operates two surface impoundments which are classified as land disposal facilities for hazardous wastes. RCRA forbids operation of a hazardous waste disposal facility without a permit. 42 U.S.C. § 6925(a) (Supp. II 1984). Prior to final administrative action on a permit application, however, qualified facilities are allowed to operate without a permit under a grandfather clause. Such permission to operate without a RCRA permit is termed "interim status." 42 U.S.C. § 6925(e) (Supp. II 1984).

Since 1980, ViChem has operated its surface impoundments under interim status, having satisfied the statutory requirements of 42 U.S.C. § 6925(e)(1). Interim status facilities must comply with operating requirements established by regulation. 40 C.F.R. § 265 (1985). Among the interim status operating requirements are the financial responsibility requirements at issue in this case. These regulations require operators to acquire liability insurance and provide financial assurances that there will

be sufficient resources available for closure and post-closure costs.[1]

In 1984, Congress amended RCRA to provide for termination of interim status for land disposal facilities, a classification which includes surface impoundments such as ViChem's, 50 Fed.Reg. 38,946, 38,947 (Sept. 25, 1985), if certain conditions were not satisfied. The 1984 amendment stated:

> In the case of each land disposal facility which has been granted interim status under this subsection before November 8, 1984, interim status shall terminate on the date twelve months after November 8, 1984, unless the owner or operator of such facility—
>
> (A) applies for a determination regarding the issuance of a permit under subsection (c) of this section for such facility before the date twelve months after November 8, 1984; and
>
> (B) certifies that such facility is in compliance with all applicable groundwater monitoring and financial responsibility requirements.

Pub.L. No. 98–616, § 213(a)(3), 98 Stat. 3221, 3241 (1984) (codified at 42 U.S.C. § 6925(e)(2) (Supp. II 1984)).

In accordance with § 6925(e)(2)(A), ViChem has submitted a Part B permit application to the New Jersey Department of Environmental Protection (DEP). The EPA has delegated responsibility for administering the RCRA permit program to the DEP as authorized by 42 U.S.C. § 6926. No final action has yet been taken on the ViChem permit application.

On November 8, 1985, ViChem submitted to the EPA a document certifying compliance with groundwater monitoring and liability insurance requirements.[2] The certifi-

---

**1.** The purpose of the financial responsibility regulations is to ensure that hazardous waste facility operators (1) are adequately indemnified against both sudden (e.g., an explosion) and non-sudden (e.g., leakage into a ground water aquifer) accidents that may occur during the period of operation, and (2) have sufficient resources to properly close the facility and to provide post-closure care, monitoring and security as required. *See* 40 C.F.R. §§ 265.140–265.-150 (interim status standards concerning finan-

cial responsibility) (1985). The regulations allow operators to establish financial assurance of closure and post-closure care by establishing a dedicated trust fund, obtaining a surety bond or a letter of credit, procuring insurance, self-insuring, or combining these measures. 40 C.F.R. §§ 265.143, 265.145 (1985).

**2.** The EPA suggests in its brief that the certification with respect to liability insurance may have

cation did not make any reference to financial assurances to cover closure and post-closure costs. On December 2nd, the EPA notified ViChem by letter that its interim status was terminated as of November 8, 1985 for failure to comply with the certification requirement of § 6925(e)(2)(B). The letter notified ViChem that it could not continue to operate, that it was required to submit a closure plan, and that continued operation could subject ViChem to both civil and criminal penalties. In a letter to the EPA dated December 27, 1985, ViChem attempted to correct the omission by certifying that it had been in compliance with all of the financial responsibility requirements as of November 8. The EPA's reply, dated January 30, 1986, reaffirmed its position that interim status had terminated as of November 8, 1985.

On February 28, 1986, ViChem filed the instant petition in this court, seeking review of the EPA's decision that ViChem's interim status had terminated. Subsequently, the EPA brought an enforcement action in the U.S. District Court of New Jersey.

## II.

■ The threshold question is whether this court has jurisdiction. The jurisdiction of the Courts of Appeal is limited to that conferred by statute. *Modine Manufacturing Corp. v. Kay*, 791 F.2d 267, 270 (3d Cir.1986); *Hempstead County and Nevada County Project v. EPA*, 700 F.2d 459, 461 (8th Cir.1983); *City of Baton Rouge v. EPA*, 620 F.2d 478, 480 (5th Cir.1980); 15 C. Wright, A. Miller & E. Cooper *Federal Practice and Procedure* § 3901 (1976). While a statutory basis for jurisdiction is required, the cases of *Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 100 S.Ct. 1093, 63 L.Ed.2d 312 (1980) (per curiam), and *Modine Manufacturing Corp. v. Kay*, 791 F.2d 267 (3d Cir.1986), caution this court not to construe appellate review provisions too narrowly. To avoid unintended and anomalous results, statutes authorizing review of specified agency actions

should be construed to allow review of agency actions which are "functionally similar" or "tantamount to" those specified actions.

In *Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 100 S.Ct. 1093, 63 L.Ed.2d 312 (1980) (per curiam), the Supreme Court interpreted a jurisdictional provision in the Clean Water Act which authorized the courts of appeals to review EPA actions "in issuing or denying any permit" under the National Pollutant Discharge Elimination System (NPDES) water pollution permit program. 33 U.S.C. § 1369(b)(1)(F) (1982). In some states, the EPA had delegated the primary responsibility for implementation of this permit program to the state governments, and the EPA retained only the power to veto permits proposed by the states. In the remaining states, the EPA issued NPDES permits directly. The question faced by the Court was whether the Clean Water Act established court of appeals jurisdiction to review an EPA veto of an NPDES permit proposed by California. The court held that EPA denial of an NPDES permit and EPA veto of a state-proposed permit were "functionally similar," and thus court of appeals jurisdiction was appropriate. *Id.* at 196. The Court reasoned that finding no appeals court jurisdiction would result in an illogically bifurcated system in which review of a veto of a state-proposed permit would take place in district court while review of an EPA permit denial would occur in a court of appeals. Moreover, the additional level of judicial review for state-issued permits would result in delay. The Court was unwilling to adopt a statutory interpretation with such counterintuitive results absent a clear expression of Congressional intent.

In the case of *Modine Manufacturing Corp. v. Kay*, 791 F.2d 267 (3d Cir.1986), this court held that a statutory provision providing court of appeals jurisdiction for review of the EPA's promulgation of effluent standards under the Clean Water Act also provided jurisdiction to review rul-

been inadequate. EPA Brief at 30. We need not, however, reach this issue.

ings concerning the applicability of those standards to a particular discharger. This court reasoned that such rulings concerning applicability of standards were "tantamount to" the promulgation of the standards themselves. *Id.* at 269. "[W]here, as here, a statute allows for some appellate review of agency action, the Supreme Court has applied a corollary of the *Abbott [Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)] rule, deciding that such jurisdictional provisions should be construed generously absent clear and convincing evidence of a contrary congressional intent." *Modine,* 791 F.2d at 270. *See Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 745, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985) ("Absent a firm indication that Congress intended to locate initial [Administrative Procedure Act] review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the courts of appeals."); *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 796–99, 105 S.Ct. 1620, 1636–38, 84 L.Ed.2d 674 (1985).

ViChem relies on 42 U.S.C. § 6976(b) as the statutory basis for appellate court jurisdiction. Section 6976(b) provides, in part:

> Review of the Administrator's action (1) in issuing, denying, modifying, or revoking any permit under section 6925 of this title (or in modifying or revoking any permit which is deemed to have been issued under section 6935(d)(1) of this title), or (2) in granting, denying, or withdrawing authorization or interim authorization under section 6926 of this title, may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person.

42 U.S.C. § 6976(b) (Supp. II 1984).

### A.

ViChem first argues that interim status is itself a permit, and thus termination of interim status is a revocation of a "permit under section 6925" reviewable by this court under § 6976(b). We reject this reading. The structure of § 6925 indicates that Congress was quite careful in distinguishing between permits and interim status. For example, the requirements for issuance of RCRA permits are prescribed in §§ 6925(a), (b), (c) and 6974(b), while the less stringent qualifications for interim status are contained in § 6925(e)(1).

■ ViChem relies on language in § 6925(e)(1) providing that any person who qualifies for interim status "shall be treated as having been issued [a RCRA] permit until such time as final administrative disposition of such application is made." 42 U.S.C. § 6925(e)(1) (Supp. II 1984). However, there would be no need for Congress to state that an interim status holder should be treated as *if* it were permitted if indeed it *was* permitted. Thus, we conclude that the statute does not reflect any Congressional intent to include interim status within the meaning of "permit."

In *Hempstead County and Nevada County v. EPA,* 700 F.2d 459 (8th Cir. 1983), involving review of an EPA determination that a hazardous waste disposal facility did not qualify for interim status, the Eighth Circuit held that interim status was not a permit within the meaning of § 6925 and thus that there was no appellate jurisdiction conferred by § 6976(b). The Seventh Circuit recently relied on *Hempstead* in reaching the same conclusion. *Northside Sanitary Landfill, Inc. v. Thomas,* 804 F.2d 371, 384 (7th Cir.1986). We are in agreement with the Seventh and Eighth Circuits to the extent that we find interim status termination is not a permit revocation and thus does not fall within the literal language of § 6976(b). However, as instructed by *Crown Simpson* and *Modine,* we shall not limit our jurisdictional analysis to a literal reading of the § 6976(b) language. Instead, we pursue a common sense analysis of the intent of Congress with respect to judicial review of interim status terminations.

### B.

The first step is to determine what intent Congress had with respect to interim status terminations when it enacted § 6976(b) in 1980. At that time, § 6925(e) provided as follows:

(e) Interim status

Any person who—

(1) owns or operates a facility required to have a permit under this section which facility is in existence on November 19, 1980,

(2) has complied with the requirements of section 6930(a) of this title, and

(3) has made an application for a permit under this section

shall be treated as having been issued such permit until such time as final administrative disposition of such application is made, unless the Administrator or other plaintiff proves that final administrative disposition of such application has not been made because of the failure of the applicant to furnish information reasonably required or requested in order to process the application.

42 U.S.C. § 6925(e) (1982) (subsequently amended).

The purpose of this section is, of course, to authorize continued operation of facilities existing on November 19, 1980 until permit proceedings were completed. Prior to final administrative disposition, the authority conferred by § 6925(e) was "functionally similar" to the authority provided by a permit as indicated by the mandate that one having interim status must "be treated as having been issued such permit" during that period. When proceedings on a permit application terminate, so does interim status and operating authority. Such a termination can occur in three ways: (1) by the issuance of a permit, (2) by the denial of a permit, or (3) by a determination that the applicant has failed to provide sufficient information to allow either issuance or denial of a permit. Each of these three decisions is made by the EPA by applying the statutory and regulatory criteria for a permit to a record compiled in a permit application proceeding. Under the regula-

tions, proceedings to terminate interim status for failure to provide sufficient information involves a hearing directed specifically to the issue of the sufficiency of the available information and thus the record is as well developed on the relevant issue as in the other two situations. 40 C.F.R. §§ 270.10(e)(5), 124.71–124.91 (1986). Finally, termination of interim status for failure to provide sufficient information is the functional equivalent of a denial of a permit application on the merits. Both result in the termination of the Agency's proceedings and require the facility to cease operations.

It is clear that a termination of interim status by the denial of a permit was intended to be reviewable in the Court of Appeals under § 6976(b) since the denial of a permit is expressly made reviewable under that section. The same can be said for the termination of interim status by the issuance of a permit. While we agree with the EPA that § 6976(b) contains no express authorization for appellate court review of the third category of interim status terminations under § 6925(e) as it stood in 1980, we can think of no reason why Congress might have wished to relegate that category to the district court while providing appellate review for the other two categories. In each of these categories, the record is fully developed before the Agency and there is no need for a district court's fact-finding capabilities. The legislative history suggests no reason for distinguishing between these three forms of interim status termination and the EPA has suggested none. In this situation, we, like the Supreme Court in *Crown Simpson,* are reluctant to create an illogically bifurcated system of review.

Because there is no indication of a Congressional intent to require district court review of terminations of interim status for failure to provide information, and because such terminations involve the same kind of judicial review as and are the functional equivalent of an interim status termination by the denial of a permit, we give effect to the *Modine* presumption and con-

clude that all interim status terminations under the original § 6925(e) were rendered reviewable in the Courts of Appeal by the enactment of § 6976(b) in 1980.

■ The second question is whether Congress intended to distinguish, for purposes of appellate review, between the original forms of interim status termination discussed above, now codified as § 6925(e)(1), and the new form of interim status termination inserted in 1984 as subsection (e)(2). The RCRA amendments of 1984 added § 6925(e)(2), which, as we have earlier indicated, terminates interim status for land disposal facilities on November 8, 1985 unless those facilities submit Part B permit applications and certify compliance with the applicable groundwater monitoring and financial responsibility requirements.[3] Admittedly, an Agency decision on the adequacy of a facility's certification under subsection (e)(2) involves considerably less agency discretion and requires much less record development than the decision under subsection (e)(1). Nevertheless, despite the procedural differences, we perceive no necessity for district court record making or fact-finding and we regard agency decisions on interim status termination under subsection (e)(2) to be functionally equivalent to termination for failure to provide information under subsection (e)(1). Since our search of the legislative history of the 1984 amendments has revealed no indicia of Congressional intent to distinguish between different kinds of interim status terminations, we again apply the *Modine* presumption and hold that agency decisions under § 6925(e)(2) are reviewable in the Courts of Appeal under § 6976(b).

### C.

■ EPA argues that a finding of jurisdiction to hear this petition for review is inappropriate because § 6925(e)(2) is a "self-implementing" statutory provision and there may be cases of interim status termination in which there is no agency

decision to be reviewed. As we have noted, Congress narrowed the EPA's discretion in making interim status termination decisions when it enacted the 1984 RCRA amendments. *See* Florio, *Congress as Reluctant Regulator: Hazardous Waste Policy in the 1980's*, 3 Yale J. on Reg. 351, 367–68 (1986). Nonetheless, the Agency retains discretion to clarify any ambiguity in the statute and to make narrow factual determinations concerning the adequacy of certification submissions. When it exercises that discretion and takes a position on the adequacy of a certification, as it did here in its December 2, 1985 letter to ViChem, we believe there is an agency decision reviewable under § 6976(b).

■ EPA's contention that § 6925(e)(2) requires no agency decision may be convincing when applied to situations in which a facility made no submissions prior to November 8th. However, in situations such as ViChem's where the operator has attempted to comply but has, in the Agency's eyes, failed, we are not prepared to say the EPA has no obligation to take a position given the substantial criminal or civil penalties which would accumulate in the period preceding an enforcement action. *See* 42 U.S.C. § 6928(d), (g) (1982 and Supp. II 1984). Nevertheless, we need not resolve that issue. We limit our holding that interim status terminations constitute agency actions reviewable in this court to situations in which an attempt at compliance has been made and the Agency has taken a definitive position that interim status has terminated.

### III.

ViChem asks this court to invalidate the EPA's termination of interim status for its two surface impoundments on the grounds that: 1) the EPA adopted an impermissible interpretation of § 6925(e)(2), and 2) the Agency's refusal to consider ViChem's sub-

---

**3.** Amendments were also made to the jurisdictional provision § 6976(b) in 1984, but these did not clarify the intent of Congress with respect to

where the review of interim status terminations should take place.

missions made after November 8 was arbitrary and capricious.

### A.

ViChem argues that the EPA erred in interpreting § 6925(e)(2) to require *submission* of certification of compliance with the financial responsibility requirements by November 8, 1985. ViChem contends that the law should be construed to require facility operators to certify that they were in *compliance* by November 8, 1985, with no submission deadline specified.

The statute itself is most reasonably read to require that certification must be submitted by November 8. The statutory provision at issue states that "interim status shall terminate on the date twelve months after November 8, 1984, unless the owner or operator of such facility—(A) applies for ... a permit ... before the date twelve months after November 8, 1984; and (B) certifies that such facility is in compliance with all applicable groundwater monitoring and financial responsibility requirements." 42 U.S.C. § 6925(e)(2) (Supp. II 1984). Interim status thus terminates on November 8 unless the certification is made, strongly suggesting that Congress intended that certification be due by that date.

In addition to requiring a strained reading of the provision's language, ViChem's construction would leave the EPA in the woeful position of being unable to distinguish those facilities that no longer qualified for interim status from those which simply had not yet certified that they were in compliance as of November 8. Such a construction runs contrary to the clear Congressional intent to accelerate the EPA's enforcement activities. *See* H.R. Rep. No. 198, 98th Cong., 2nd Sess., Pt. I, at 44, *reprinted in* 1984 U.S.Code Cong. & Admin.News 5576, 5603 (one purpose of

1984 amendments was "to expedite the final permit review of major land disposal ... facilities and close those facilities that cannot or will not meet the final standards at the earliest possible date").

Admitting some ambiguity in the statute itself, marked by the inclusion of a submission deadline in subsection (e)(2)(A) and the absence of such a date in subsection (e)(2)(B), we must consider the EPA's interpretation of the statute. "It is by now commonplace that 'when faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.' " *EPA v. National Crushed Stone Association,* 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980) (quoting *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)). "An agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress." *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 461, 88 L.Ed.2d 419 (1985). *Accord Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). The statute has consistently been interpreted by the Agency to require certification prior to November 8.[4] 50 Fed.Reg. 38,946 (Sept. 25, 1985); 50 Fed.Reg. 28,702, 28,723–24 (July 15, 1985). As we find this interpretation to be both reasonable and consonant with the intent of Congress, we are obliged to defer to the EPA's interpretation. Thus, we hold that the EPA did not err in requiring § 6925(e)(2)(B) certifications to be submitted by November 8, 1985.

### B.

Section 6976(b) states that judicial review under that provision "shall be in

---

4. ViChem suggests that the September 25th Federal Register supports its claim that the law required compliance, not actual certification, by November 8. ViChem is correct in asserting that the notice states actual compliance by November 8 is a condition of maintaining interim status. This is not inconsistent with the require-

ment that certification is due by November 8, because the notice explains that an operator cannot certify compliance if the facility is not actually in compliance. There is no ambiguity in the EPA's statutory construction. *See* 50 Fed. Reg. 38,946–49 (Sept. 25, 1985).

accordance with sections 701 through 706 of Title 5," the judicial review provisions of the Administrative Procedure Act. 42 U.S.C. § 6976(b) (Supp. II 1984). Section 706 provides that a reviewing court shall hold unlawful agency actions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706 (1982). ViChem argues that the EPA acted in an arbitrary and capricious manner and abused its discretion by ignoring ViChem's attempts to amend its certification *nunc pro tunc* after the November 8 deadline. Given the EPA's valid interpretation of the statute to require submission of certification by November 8, 1985, ViChem's post-deadline submissions were irrelevant to the Agency's determination of whether a proper certification had been tendered. The EPA's refusal to consider these materials did not constitute an error of law. Thus, we find no error in the EPA's decision to terminate interim status in this case.[5]

## IV.

We hold that this court has jurisdiction to entertain ViChem's petition for review. However, in accordance with the concept of judicial deference to an agency's reasonable interpretation of a statute it administers, the petition for review is denied.

---

**5.** ViChem warns that the New Jersey Department of Environmental Protection might rely on the termination of ViChem's interim status as a reason for denying a RCRA permit. Such reliance may be unjustified. Neither the EPA nor this court has made any substantive evaluation of the adequacy of ViChem's financial responsibility measures in reaching our respective decisions. Our decision to uphold the termination of interim status is based solely on a failure to *certify* compliance with the financial responsibility requirements prior to the statutorily prescribed deadline. Any review of the DEP's permit decision must, of course, await final action by that agency.