

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-14-1994

# Thermalkem, Inc. v. U.S. EPA

Precedential or Non-Precedential:

Docket 93-3249

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Thermalkem, Inc. v. U.S. EPA" (1994). *1994 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

_____

No. 93-3249

_____

THERMALKEM, INC.,
                              Petitioner

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
                              Respondent

_____

Appeal from United States Environmental Protection Agency
(RCRA No. 92-4)

_____

Argued:  February 15, 1994

PRESENT:  BECKER, HUTCHINSON and COWEN, <u>Circuit Judges</u>

(Opinion Filed:  June 14, 1994)

_____

Angus Macbeth, Esquire                (Argued)
Kathryn B. Thomson, Esquire
Sidley & Austin
1722 Eye Street, N.W.
Washington, DC     20006
          Attorneys for Petitioner

Peter R. Steenland, Acting Assistant Attorney General
   Environment and Natural Resources Division
Eileen T. McDonough, Esquire          (Argued)
   Environmental Defense Section
United States Department of Justice
10th & Constitution Avenue, N.W.
Washington, DC       20530

        and

Brian Grant, Esquire
Office of General Counsel

United States Environmental Protection Agency
401 M Street, S.W.
Washington, DC

and

Mita Ghosh, Esquire
Office of Regional Counsel
EPA Region IV
345 Courtland Street, N.E.
Atlanta, GA

        Attorneys for Respondent

—————————

OPINION OF THE COURT

—————————

HUTCHINSON, <u>Circuit Judge</u>.


      Petitioner, ThermalKEM, Inc., the owner and operator of a hazardous waste treatment facility in Rock Hill, South Carolina, petitions for review of the Environmental Appeals Board's ("EAB") dismissal of ThermalKEM's appeal of respondent, United States Environmental Protection Agency's ("EPA"), decision denying ThermalKEM's request to amend its pending permit application. EAB held it lacked jurisdiction to hear EPA Region IV's denial of ThermalKEM's proposed amendment to Part A of its pending permit application.

      EPA Region IV had denied the amendment after concluding that it was an attempt by ThermalKEM to alter interim operating status to an extent that required Region IV approval. ThermalKEM argued the proposed amendment would only have permitted ThermalKEM's facility to continue to process waste materials at the same rate it had before EPA's addition of several compounds to the class of substances EPA regulations define as hazardous.

ThermalKEM had incinerated these compounds at its treatment facility before their classification as hazardous.

After EAB dismissed ThermalKEM's administrative appeal for lack of jurisdiction, ThermalKEM filed this petition for review. In its petition, ThermalKEM asks us to review EAB's refusal to hear its challenge but not the merits of that challenge. Congress has strictly circumscribed our jurisdiction to review denials of applications for permits to dispose of toxic substances. Therefore, for the reasons given below, we conclude that we lack jurisdiction over the EAB decision dismissing, without consideration of the merits, ThermalKEM's appeal of EPA Region IV's denial of ThermalKEM's proposal to amend Part A of its pending permit application.[0]

I.

ThermalKEM, Inc. filed this petition for review on June 1, 1993, pursuant to section 7006(b) of the Resource Conservation and Recovery Act ("RCRA" or "Act"), 42 U.S.C.A. § 6976(b) (West Supp. 1994), contesting EAB's refusal to hear, on the merits, ThermalKEM's challenge to EPA's denial of the proposed permit application amendment. ThermalKEM filed its

_____

[0]ThermalKEM contends the proposed amendment to Part A of its pending permit application would not result in a burn of any greater quantity of any particular chemical than originally allowed under its interim status. We will assume that is true, but note that the amendment would increase the quantity of hazardous materials burned at ThermalKEM's treatment facility because EPA has recently added some of the chemicals ThermalKEM has been treating to the list of those that are hazardous. See 55 Fed. Reg. § 11798 (Mar. 29, 1990) (amending 40 C.F.R. §§ 261, 264, 265, 268, 271, 309).

petition for EAB review on January 31, 1992. EAB dismissed ThermalKEM's petition on March 10, 1993, holding it lacked jurisdiction to consider this appeal from the decision of an EPA regional director on ThermalKEM's interim status. See In re ThermalKEM, Inc., RCRA Appeal No. 92-4, slip op. at 4 (Mar. 10, 1993).

ThermalKEM is a Delaware corporation. It owns and operates a hazardous waste facility in Rock Hill, South Carolina, where it disposes of hazardous waste in various ways, including incineration. RCRA governs the treatment, storage and disposal of solid waste in the United States, both hazardous and non-hazardous. Section 3005(a) of the Act, 42 U.S.C.A. § 6925(a), requires an owner or operator of hazardous waste treatment, storage or disposal facilities ("TSDF") to obtain a permit governing the facilities' operation. Realizing that EPA could not possibly issue all necessary permits to all the hazardous waste treatment facilities in the United States as soon as RCRA went into effect, Congress enacted § 3005(e) of the Act, 42 U.S.C.A. § 6925(e), as a transitional measure. Section 3005(e) allows an owner or operator of a facility that was in existence on November 19, 1980, (the effective date of RCRA) to continue operations pending issuance of a final permit so long as two conditions are met. First, the owner or operator of the TSDF must timely notify EPA that it is operating a hazardous waste facility. 40 C.F.R. § 270.70(a)(1) (1992); see also 42 U.S.C.A. § 6930(a). Second, the owner or operator must file "Part A" of a RCRA permit application. See 40 C.F.R § 270.70(a)(2); see also

5

United States (EPA) v. Environmental Waste Control, Inc., 710
F. Supp. 1172, 1182 (N.D. Ind. 1989).[0]  Where an owner or
operator meets these two conditions, any TSDF in operation on the
relevant date automatically receives "interim status" and "shall
be treated as having been issued [a] permit until such time as
final administrative disposition of [the permit] application is
made . . . ."  42 U.S.C.A § 6925(e); see also 40 C.F.R.
§ 270.70(a).  The governing regulations explicitly state that
interim status is not itself a "permit."  40 C.F.R. §§ 124.2,
270.2 (definition of permit).  Moreover, interim status
facilities may not process hazardous wastes beyond the treatment
capacity specified on Part A of the facility's permit
application.  If a facility operating on interim status wants to
process hazardous substances in a greater amount than it
represented it would or could in Part A of its permit
application, it must either receive EPA approval, see 40 C.F.R.
§ 270.72(a)(2), or qualify for an increase with respect to
certain wastes that become newly listed or identified after it
submits a revised Part A permit application.  See 40 C.F.R.

_____

[0]The RCRA permit application consists of two parts.  Part A
primarily gives general information.  It includes, e.g, the name
and location of the facility, a general overview of the nature of
the operation and an estimate of the rate of the facility's
output of hazardous substances.  40 C.F.R. § 270.13.  Part B of
the application is more detailed and includes specific
information relating to disposal facilities, environmental
impact, and other details necessary for the review of the permit
application.  Id. § 270.14.  EPA will not review the permit
application or issue a permit until it has received all of the
information required on Part B of the permit application.  Id.
§ 124.3.

6

§ 20.72(a)(1).[0]  Interim status terminates after the appropriate state and federal regulatory authorities render a final decision

---

[0]Section 270.72(a) provides in relevant part:

> (a)  Except as provided in paragraph (b), the owner or operator of an interim status facility may make the following changes at the facility:
>
> > (1)  Treatment, storage, or disposal of new hazardous wastes not previously identified in Part A of the permit application (and, in the case of newly listed or identified wastes, addition of the units being used to treat, store, or dispose of the hazardous wastes on the effective date of the listing or identification) if the owner or operator submits a revised Part A permit application prior to such treatment, storage, or disposal;
> >
> > (2)  Increases in the design capacity of processes used at the facility if the owner or operator submits a revised Part A permit application prior to such a change (along with a justification explaining the need for the change) and the Director approves the changes because:
> >
> > > (i)  There is a lack of available treatment, storage, or disposal capacity at other hazardous waste management facilities, or
> > >
> > > (ii) The change is necessary to comply with a Federal, State, or local requirement.

40 C.F.R. § 270.72(a) (1992).  Whether ThermalKEM's facility should automatically, under section 270.72(a)(1), receive permission to continue operations on interim status as heretofore upon mere submission of a revised Part A or must justify its request under section 270.72(a)(2) seems to be the issue on the merits, an issue not before us on this petition for review.

on the permit application, when the TSDF fails to timely submit a complete Part B of the application, or when the TSDF fails to comply with the rules governing operation on interim status. 40 C.F.R. § 270.73.

On November 17, 1980, ThermalKEM, through its predecessor, Industrial Chemical Company, Inc., filed the notification 42 U.S.C.A. § 6930(a) requires and Part A of its permit application, thereby complying with the interim procedures in RCRA and achieving interim status. In 1984, Congress amended RCRA by enacting the Hazardous and Solid Waste Amendments Act of 1984 ("HSWA"), Pub. L. No. 616, 98 Stat. 3221 (1984) (codified as amended at 42 U.S.C.A. §§ 6901-6987). HSWA established a time schedule within which interim status facilities were to submit Part B of the permit application. 42 U.S.C.A. § 6925; see also 40 C.F.R. § 270.73. The EPA and South Carolina Department of Health and Environmental Control ("DHEC") asked ThermalKEM to submit Part B of its application in accord with this schedule. In January of 1984, ThermalKEM submitted Part B to both EPA Region IV and the DHEC. In 1985, Congress authorized South Carolina to implement its own hazardous waste program and DHEC took the lead in processing ThermalKEM's application for a permit. Between January 1984 and May 1987, ThermalKEM worked with EPA and DHEC to complete Part B of ThermalKEM's permit application. From time to time during this period, ThermalKEM revised Part A of its permit application to reflect changes in hazardous waste mass feed, pursuant to 40 C.F.R. §§ 270.10(g), 270.70, and 270.72.

In 1987, the DHEC advised ThermalKEM that its permit application was complete and listed it for public inspection and comment. In 1988, the EPA and DHEC approved the ThermalKEM application and issued an operating permit for the facility for one incinerator unit. Subsequently, two citizens' groups formally protested issuance of the permit. Their protests automatically put the TSDF back on interim status until the protests were resolved. That has not yet occurred and ThermalKEM remains on interim status.

On September 25, 1990, EPA's "organic toxicity characteristics" rule ("OTC rule") became effective.[0] ThermalKEM concluded that the OTC rule redefined as hazardous a number of previously non-hazardous substances it handled at its facility. Believing its Part A application was no longer correct under the OTC rule, ThermalKEM filed a revised Part A on September 21, 1990, pursuant to 40 C.F.R. § 270.12. The revision identified the newly classified substances and showed a feed rate increase from 2.85 to 5.35 tons per hour. Sixteen months later, on January 8, 1992, EPA Region IV notified ThermalKEM that its revised Part A application was a request to increase interim status incineration which required justification and EPA approval in accord with 40 C.F.R. § 270.72(a)(2). EPA also concluded that

---

[0]See 55 Fed. Reg. 11,798 (March 29, 1990); 40 C.F.R. Part 261, subpart C. "The rule, inter alia, establishes a new hazardous waste characteristic based on the leachability of hazardous constituents under the toxicity characteristic leaching procedure and adds 25 new organic constituents to the list of toxic constituents regulated under RCRA." In re ThermalKEM, Inc., RCRA Appeal No. 92-4, slip op. at 2 n.2 (March 10, 1993) (citing 55 Fed. Reg. at 11,803; Appendix II to 40 C.F.R. Part 261).

ThermalKEM's request to increase its hazardous burning rate should be denied unless ThermalKEM produced evidence of "trial burns" establishing that the increases were safe.[0]  Accordingly, EPA denied the Part A amendment.

On January 31, 1992, ThermalKEM petitioned the Administrator of the EPA for review of the denial of the revised Part A.[0]  On March 10, 1993, EAB, acting on behalf of the Administrator under a regulatory delegation, see 40 C.F.R. § 124.19(a) (1992), concluded it lacked jurisdiction to hear the petition.[0]  On June 1, 1993, ThermalKEM filed this petition for judicial review.

At the threshold, we confront the question of our own jurisdiction.  Whether we have jurisdiction pursuant to 42 U.S.C.A. § 6976 is subject to plenary review.  Vineland Chem. Co.

---

[0]Trial burns are tests of the facility.  The EPA requires trial burns in certain cases to insure public safety.  Trial burns measure the feed rate at which an incinerator can operate without producing proscribed emission rates.  A facility must conduct new trial burns in order to increase its feed rate.  40 C.F.R. § 270.42, App. I, L. 1, 2.

[0]Before EAB, ThermalKEM argued on the merits that it was entitled to amend its application under 40 C.F.R. § 270.72(a)(1) without EPA approval.  In the alternative to its position that EAB lacked jurisdiction, EPA contended on the merits that ThermalKEM's amendment was governed by 40 C.F.R. § 270.72(a)(2) which requires EPA approval.

[0]EAB has jurisdiction to consider "any condition of the permit decision."  40 C.F.R. § 124.19(a).  In a decision raising principles and issues similar to those present in this petition for review, EAB held that ThermalKEM's proposed amendment and Region IV's denial thereof was not a "permit decision" but a request to change interim status.  ThermalKEM, slip op. at 3–4.  It held, therefore, that it lacked jurisdiction to consider ThermalKEM's challenge and never reached the merits.  Id. at 4.

10

<u>v. United States Envtl. Protection Agency</u>, 810 F.2d 402, 405–06 (3d Cir. 1987).

II.

It is axiomatic that our jurisdiction "is limited to that conferred by statute." <u>Vineland Chem. Co.</u>, 810 F.2d at 405. Case law, however, "caution[s] this court not to construe appellate review of provisions too narrowly. To avoid unintended and anomalous results, statutes authorizing review of specified agency actions should be construed to allow review of agency actions which are 'functionally similar' or 'tantamount to' those specified actions." <u>Id.</u>

> RCRA provides:
>     Review of the Administrator's action (1) in <u>issuing, denying, modifying, or revoking any permit</u> under section 6925 of this title . . . may be had by any interested person in the Circuit Court of Appeals of the United States for the the [sic] Federal Judicial District in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such issuance, denial, modification, revocation, grant, or withdrawal . . . .

42 U.S.C.A. § 6976(b) (West Supp. 1993) (emphasis added).

In <u>Vineland</u> we addressed an analogous issue on our jurisdiction under section 6976(b). Vineland Chemical Co., like ThermalKEM, operated a TSDF under interim status after filing Part A of its permit application. <u>Vineland Chem. Co.</u>, 810 F.2d at 404. In 1984, Congress amended the Act to give the EPA power

11

to terminate interim status if an interim facility did not comply with "financial responsibility requirements." See 42 U.S.C.A. § 6925(e)(2). When Vineland submitted information to complete Part B of its permit application, it did not provide assurance that closure and post-closure costs would be covered. Relying on section 6925(e)(2), EPA terminated Vineland's interim status and Vineland petitioned for our review. Vineland Chem. Co., 810 F.2d at 404-05.

EPA contested our jurisdiction arguing that termination of interim status was not an act "issuing, denying, modifying, or revoking any permit" that could be subject to court of appeals review under section 6976 because a facility operating under interim status was not operating under permit. Vineland argued that "interim status is itself a permit." Id. at 406. We rejected that argument. "The structure of § 6925 indicates that Congress was quite careful in distinguishing between permits and interim status. . . . We conclude that the statute does not reflect any Congressional intent to include interim status within the meaning of 'permit.'" Id.

Nevertheless, we went on to consider whether Congress intended to provide judicial review in the court of appeals of EPA's termination of a facility's interim status. We observed that interim status could be terminated only by (1) acceptance of the permit application; (2) denial of the permit application; or (3) failure of the applicant to meet certain continuing obligations essential to interim status. Id. at 407. We noted that the first and second reasons for termination of interim

12

status are expressly reviewable under section 6976(b) but that the statute does not explicitly provide for judicial review of EPA's termination of interim status when a facility fails to meet its continuing obligations.  We concluded, however, that complete termination of interim status for failure to comply with continuing interim requirements "is the functional equivalent of a denial of a permit application on the merits."  Id.  We reasoned, "[b]oth result in the termination of the Agency's proceedings and require the facility to cease operations."  Id.  We then stated, "we can think of no reason why Congress might have wished to relegate that category to the district court while providing appellate review for the other two categories."  Id.  Thus, where termination of interim status for failure to meet certain qualifications was equivalent to a permit denial, we held that the agency's action was subject to appellate review in the courts of appeals.  Id. at 407–08.  We considered and rejected EPA's argument that no agency action had occurred because the termination was self implementing.  Id. at 408.  "[W]here the operator has attempted to comply but has, in the Agency's eyes, failed, we are not prepared to say the EPA has no obligation to take a position . . . ."  Id.  Accordingly, we held that "interim status terminations constitute agency actions reviewable in this court [when] an attempt at compliance has been made and the Agency has taken a definitive position that interim status has terminated."  Id.  Vineland has not been universally accepted.[0]

---

[0] See Sanders Lead Co. v. Thomas, 813 F.2d 1190, 1191 (11th Cir. 1987) (per curiam); Northside Sanitary Landfill, Inc. v. Thomas,

13

Vineland controls two issues in this case. First, it clearly holds that interim status is not equivalent to permit status. Vineland Chem. Co., 810 F.2d at 406. Second, it allows court of appeals review of agency decisions that do not involve permits when a party demonstrates that altering interim status is the "functional equivalent" of the denial of a permit. Id. at 408.

Vineland therefore requires us to consider the nature of the order ThermalKEM challenges before deciding whether we have jurisdiction over the petition. Indeed, ThermalKEM does not ask us to review the decision of Region IV rejecting its proposed amendment to Part A of its permit application. Strictly speaking, it asks us only to review the decision of the EAB that it lacked jurisdiction to hear ThermalKEM's administrative appeal of Region IV's denial of its proposed revision of Part A of its permit application. Of course, we are nevertheless unable to do so without satisfying ourselves of our own jurisdiction.

Because EAB's decision is not, on its face, a decision on the merits of a permit or ThermalKEM's continuing interim status but a decision about EAB's own powers to review orders, it may be argued formalistically that the EAB decision is beyond the scope of the review that section 6976(b) contemplates. Vineland, however, holds that we should review EPA actions that have the functional effect of termination under section 6976(b). Vineland

804 F.2d 371, 384 (7th Cir. 1986); Granger Land Dev. Co. v. Thomas, 786 F.2d 1164 (6th Cir. 1986) (table); Hempstead County & Nevada County Project v. United States Envtl. Protection Agency, 700 F.2d 459, 462 (8th Cir. 1983).

14

elevates the substance of the agency action over the form it takes. Unquestionably, EAB has effectively affirmed Region IV's denial of ThermalKEM's proposed amendment when it declined jurisdiction over its administrative appeal. EAB's refusal to entertain ThermalKEM's appeal made Region IV's action concerning interim status administratively final, and thus we think we must consider whether the EAB order is the "functional equivalent" of a permit denial.[0] We hold it is not.

We can quickly deal with ThermalKEM's first argument that rejection of the proposed amendment to Part A of its permit application is a permit denial. In Vineland, we specifically held that termination of interim status is not a denial of a permit. Based on this, we must reject ThermalKEM's contention that the EPA's denial of its request to amend Part A of its permit application is a permit denial subject to our review.

ThermalKEM also contends that EPA partially terminated ThermalKEM's interim status for the incineration of certain materials when it rejected ThermalKEM's amended Part A application and that such a partial termination is reviewable under section 6976(b) in accord with Vineland. We need not reach or decide whether a denial of an increase in feed rate after a change in EPA regulations constitutes a "partial termination." Even if we were to agree with ThermalKEM and conclude that EPA's actions did effect partial termination of ThermalKEM's interim

---

[0]Cf. Ciba-Geigy Corp. v. Sidamon-Eristoff, 3 F.3d 40, 45 (2d Cir. 1993) ("The EAB's decision rejecting Ciba's petition for review of the original issuance of the permit constitutes action of the Administrator.").

15

status, EPA's action would not be reviewable under section 6976(b).

Vineland is materially different from this case. In Vineland, EPA revoked Vineland's interim status, not only terminating all agency consideration of Vineland's permit application but also causing its facility to cease operation. Here, EPA Region IV's act has at best altered ThermalKEM's interim status by reducing its facility's interim capacity to process hazardous wastes because EPA has added certain substances ThermalKEM had been processing to the category of hazardous wastes. In Vineland, we made it clear that we were considering a termination of Vineland's interim status and the attendant effects of terminating all the affected facility's operations. We stated:

> Because there is no indication of a Congressional intent to require district court review of terminations of interim status for failure to provide information, and because such terminations involve the same kind of judicial review as and are the functional equivalent of an interim status termination by the denial of a permit, we . . . conclude that all interim status terminations under the original § 6925(e) were rendered reviewable in the Courts of Appeals by the enactment of § 6976(b) in 1980.

Vineland Chem. Co., 810 F.2d at 407-08 (emphasis added). We also emphasized, "[w]e limit our holding that interim status terminations constitute agency actions reviewable in this court to situations in which an attempt at compliance has been made and

16

the Agency has taken a definitive position that interim status has _terminated_." _Id._ at 408.  We likened loss of interim status to permit decisions because "[b]oth result in the termination of the Agency's proceedings and require the facility to cease operations."  _Id._ at 407; _see_ _also_ _id._ at 408 ("Since our search of the legislative history of the 1984 amendments has revealed no indicia of Congressional intent to distinguish between different kinds of interim status terminations, we . . . hold that agency decisions under § 6925(e)(2) are reviewable in the Courts of Appeal under § 6976(b).").  Because EPA's revocation of interim status forced a cessation of disposal activity, we concluded that EPA's actions were the functional equivalent of a permit denial.  In the instant case, no termination has occurred and ThermalKEM concedes it "remains an interim status facility."  Brief of Petitioner at 7.

To be reviewable in a court of appeals under _Vineland_'s rationale, a change in interim status must cause the termination of hazardous waste disposal and the cessation of attempts to receive EPA approval to engage in regulated activity if it is to be functionally equal to a permit denial.  ThermalKEM asks us to further expand _Vineland_'s broad reading of section 6976(b) to hold that any EPA decision which alters interim status is reviewable in a court of appeals.  We do not think that _Vineland_ should be extended in that way or that Congress intended to grant persons operating hazardous waste facilities on interim status a broad right to review in this or any other court of appeals.

17

Because termination of interim status and denial of a permit both have the effect of halting operations and ending agency consideration of the facility's permit application, we concluded in Vineland that both should be subject to review in the same forum. We thought a system that required separate forums to review occurrences that are functionally similar and lead to identical outcomes would be strange. Though termination of interim status may be the functional equivalent of a permit denial, modification of interim status is not. Not every adjustment to interim status has that aspect of finality, and it is plainly lacking here. A partial termination does not stop a facility from operating, nor does it conclude EPA consideration of the matter.[0]

ThermalKEM is not left without further avenues of relief before the EPA and the judiciary. Once a final decision is reached on its still pending permit, ThermalKEM can either challenge the permit's restrictions in this Court under section 6976(b) or again apply to amend the permit. Courts of appeals are not a forum for challenges to every interlocutory EPA action. See, e.g., United Technologies Corp. v. United States Envtl. Protection Agency, 821 F.2d 714, 721 (D.C. Cir. 1987) (declining jurisdiction over challenge to regulation where potential for further agency action on issue remained). Unless a party has no

_____

[0]Though situations may occur in which alteration of interim status might have an effect, economic or otherwise, that prevents a facility from operation, that is not the case here. ThermalKEM has not alleged or shown that its Rock Hill plant can no longer operate in light of the EPA's refusal to permit amendment of Part A.

18

further recourse before the agency, courts of appeals lack power to review the agency's interim decisions. Instead, our jurisdiction to review EPA permit proceedings is limited to cases in which the agency's act has effectively terminated the operation of a facility on interim status and no further agency action will take place. Vineland holds that facilities that have had their interim status terminated in that way have suffered final agency action that is functionally equivalent to a permit denial. Only in these circumstances does Vineland hold that we have jurisdiction to review an EPA action that causes or directs a hazardous waste facility to cease operations. If a facility remains in operation despite an administrative ruling which modifies its interim status, further administrative review is available after EPA takes final action on the facility's permit application before EAB. Thereafter, this Court can review the agency's underlying interlocutory decisions concerning the permit. Review of every EPA decision that alters interim status and the ensuing availability of piecemeal review would contravene the fundamental policy of judicial efficiency that underlies the finality that is a condition of judicial review.

If ThermalKEM remains dissatisfied with the EPA's action, it may still ask a district court to review EPA's interpretation of the statute's provision for interim status. See Vineland Chem. Co., 810 F.2d at 407 (identifying district court as alternate forum if court of appeals lacks jurisdiction); cf. Hempstead County, 700 F.2d at 462–63 (transferring challenge to interim status to district court under 28 U.S.C.A. § 1631 after

19

concluding section 6976(b) jurisdiction did not lie).  In

Vineland, "we [could] think of no reason why Congress might have

wished to relegate [interim status terminations] to the district

court while providing appellate review for [direct permit

denials]," and concluded that resort to the district court was

inconsistent with the review structure implemented in RCRA.

Vineland Chem. Co., 810 F.2d at 407.  A facility that can

continue to operate under a modified interim status does not face

a harsh result that is equivalent to termination of a permit.

Neither the text of section 6976(b) nor its legislative history

persuades us that Congress intended the courts of appeals to

review every change in interim status.  We believe such decisions

should not be reviewed in an appellate court until they are

incorporated into a final permit decision or the functional

equivalent thereof.  If interim judiciary review is necessary, we

think it should occur in a district court, a forum more suited to

that purpose.[0]

        In sum, we hold that Vineland did not extend our

jurisdiction to review EPA's action affecting interim status

beyond agency determinations that are the functional equivalent

of permit denials because such action causes or requires the

interim operator to cease operation.  While interim status

---

[0]Cf. Hempstead County, 700 F.2d at 462 (holding court of appeals
not proper forum where, inter alia, proper record does not exist
for appellate review and district court better suited to fact
gathering task); Susquehanna Valley Alliance v. Three Mile Island
Nuclear Reactor, 619 F.2d 231, 241 (3d Cir. 1980) ("While the
court of appeals can devise procedures for the preparation of a
record . . ., the district has both procedures and facilities at
hand for that task."), cert. denied, 449 U.S. 1096 (1981).

20

terminations and permit denials both share the salient effect of cessation of operation and an end to EPA consideration, a modification of interim status will usually have neither effect. Whatever modification of interim status EPA's denial of ThermalKEM's proposed amendment may have, it is not "functionally equivalent" to a permit denial, and we therefore have no jurisdiction to review under section 6976(b) or otherwise to decide ThermalKEM's petition for review. Accordingly, we lack jurisdiction to review EAB's order dismissing ThermalKEM's appeal from Region IV's decision and will dismiss ThermalKEM's petition.