**GREENPEACE, INC., et al., Petitioners,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

**Nos. 93–1458, 93–1682, 93–1683.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 31, 1994.

Decided Jan. 13, 1995.

---

Richard E. Condit, Washington, DC, argued the cause and filed the briefs, for petitioners Greenpeace, Inc., et al.

Ashley C. Schannauer, Pittsburgh, PA, argued the cause and filed the briefs, for petitioner City of Pittsburgh. Mary K. Conturo, Pittsburgh, PA, entered an appearance.

Greer S. Goldman and Seth M. Barsky, Attys., U.S. Dept. of Justice, argued the cause, for respondent. With them on the briefs was Lois J. Schiffer, Acting Asst. Atty. Gen., U.S. Department of Justice.

Before: WILLIAMS, GINSBURG, and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

These petitions present one of several challenges by petitioners to various stages of the construction and operation of a hazardous waste incinerator owned and operated by Waste Technologies Industries ("WTI") in East Liverpool, Ohio. Three actions by the Environmental Protection Agency are challenged. First, in Petition No. 93–1458, Greenpeace, Inc., Alonzo Spencer, and Teresa Swearingen (together "Greenpeace"), seek review of the Regional Administrator's letter of April 6, 1993, confirming that WTI had satisfied permit conditions for commencement of post-trial burn operations. Second, in Petition No. 93–1682, the City of Pittsburgh seeks review of the Regional Administrator's letter of April 12, 1993, notifying WTI that it must comply with two additional limitations in its post-trial burn operations. Third, in Petition No. 93–1683, the City of Pittsburgh seeks review of the June 21, 1993,

decision of the agency's Environmental Appeals Board ("Appeals Board") denying administrative review of the April 12th letter for lack of jurisdiction. Because the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6976(b) (1988), limits judicial review to the EPA Administrator's issuance, denial, modification, or revocation of a permit, and we conclude that none of the challenged actions issued, denied, modified, or revoked WTI's permit, the court lacks jurisdiction, and we dismiss the petitions.[1] *Hazardous Waste Treatment Council v. EPA,* 910 F.2d 974, 976 (D.C.Cir.1990).

## I.

Under the RCRA, every owner and operator of a hazardous waste treatment, storage, or disposal facility must obtain a permit. 42 U.S.C. § 6925(a). Pursuant to regulations promulgated by the Agency under the RCRA, a final permit to operate a hazardous waste incinerator is the culmination of several phases of operation. *Id.* § 6924(a); 40 C.F.R. § 270.62. The first phase follows construction and authorizes limited "shakedown" operations. 40 C.F.R. § 264.344(c)(1). The second phase requires that a newly-constructed hazardous waste incinerator conduct a "trial burn" designed to test emissions and provide data from which the Agency sets final operating conditions. *Id.* §§ 264.344(c)(2) & (c)(4), 270.62(b). A permit may authorize a third phase allowing a new

hazardous waste incinerator to engage in limited commercial operations, or "post-trial burn operations," prior to the Agency's final modification of the permit to reflect trial burn results. *Id.* § 270.62(c).[2] The final phase begins once the Agency sets the final operating conditions based on the trial burn results. *See id.* § 270.62(b)(10).

In 1983, the Agency issued a permit to WTI to construct a hazardous waste incinerator in East Liverpool, Ohio. The permit contained various conditions for operation and became effective in 1985. The Agency modified the permit in February 1992 to include additional pollution control equipment.[3] The incinerator has been in limited commercial operation since November 12, 1992, and it has been burning hazardous waste according to the RCRA permit limits since December 9, 1992. *Greenpeace, Inc. v. Waste Technologies Indus.,* 9 F.3d 1174, 1177 (6th Cir.1993).

In order to receive approval for full-scale commercial operations, WTI's permit required that the incinerator conduct an eight-day trial burn. WTI submitted a trial burn plan, which the Regional Administrator approved on January 8, 1993. At the time the Regional Administrator imposed additional restrictions regarding carbon monoxide and particulate emissions, which were incorporated into the original WTI permit. 40 C.F.R. § 270.62(c).[4] WTI conducted a trial burn

1. The Agency also contends that the court lacks jurisdiction because Greenpeace's petition is an untimely challenge to the RCRA regulations and prior agency permitting actions, and because Greenpeace and the City of Pittsburgh have failed to exhaust their administrative remedies. In light of our disposition, we do not reach these issues.

2. 40 C.F.R. § 270.62(c) provides in pertinent part:

For the purposes of allowing operation of a new hazardous waste incinerator following completion of the trial burn and prior to the final modification of the permit conditions to reflect the trial burn results, the Director may establish permit conditions, ... in the permit to a new hazardous waste incinerator.

3. The State of West Virginia and others challenged this modification before the Appeals Board but did not appeal the Board's rejection of

their challenge. Instead, West Virginia brought a citizen's suit in federal district court against WTI, EPA, and the Ohio EPA, which the Fourth Circuit dismissed as an improper collateral attack on prior permitting decisions. *Palumbo v. Waste Technologies Indus.,* 989 F.2d 156, 159 (4th Cir.1993).

4. On January 13, 1993, Greenpeace and others filed suit in federal district court seeking a temporary restraining order and preliminary injunction pursuant to RCRA's citizen suit provision. 42 U.S.C. § 6972. After issuance of a temporary restraining order, Greenpeace filed a petition with the EPA Administrator seeking revocation of the Regional Administrator's approval of the trial burn plan and prohibition of further operations at the facility. *See* 40 C.F.R. § 124.5(a). The Acting Administrator denied the request, finding no unreasonable risk to human health or the environment. While 40 C.F.R. § 124.5(b) authorizes an informal appeal to the Appeals Board from the Regional Administrator's refusal

from March 10 to 18, 1993. Based on the initial results, the Regional Administrator notified WTI by letter of April 6, 1993, that emissions levels of carbon monoxide and particulate matter were within levels specified in the permit and that, as a result, WTI could engage in post-trial burn operations until the Agency set the final operating conditions.

Subsequent analysis, however, revealed that WTI failed to achieve the 99.99% destruction removal efficiency requirement ("DRE"), a regulatory performance standard incorporated as a condition in WTI's permit that requires a hazardous waste incinerator to destroy 99.99% of the principal organic hazardous constituents fed into the facility. *See* 40 C.F.R. § 264.343(a). As a result, by letter of April 12, 1993, the Regional Administrator imposed additional restrictions on post-trial burn operations by prohibiting WTI from burning aqueous wastes and limiting the total waste feed rate into the incinerator.[5]

Greenpeace filed a petition with the Appeals Board for review of the April 6th letter confirming the incinerator's compliance with the emission limits set in the permit and, thereby, authorizing post-trial burn operations. The City of Pittsburgh, along with the State of West Virginia, petitioned the Appeals Board for review of the April 12th letter prohibiting the burning of aqueous waste and limiting the total waste-feed rate. The Appeals Board dismissed the petitions on the ground that it lacked subject matter jurisdiction because the letters arose from implementation of the WTI permit and thus were not "final permit decisions" subject to Appeals Board review pursuant to 40 C.F.R. § 124.19. *In the Matter of: Waste Technolo-*

*gies Industries Hazardous Waste Incinerator Commercial Operation Permit,* RCRA Appeal Nos. 93–7 & 93–9, 1993 RCRA LEXIS 105 (Jun. 21, 1993) ("Appeals Board Decision"). Greenpeace and the City of Pittsburgh now petition for review of the letters and the Appeals Board Decision. The Agency has moved to dismiss the petitions for a lack of jurisdiction.

## II.

■ Section 7006(b) of the RCRA authorizes judicial review by federal appellate courts of the "Administrator's action … in issuing, denying, modifying, or revoking any permit." 42 U.S.C. § 6976(b). Greenpeace contends that the Regional Administrator's April 6th letter either issued WTI a permit or modified its existing permit within the meaning of § 7006(b). The City of Pittsburgh likewise maintains that the April 12th letter modified WTI's permit within the meaning of § 7006(b) because it prohibited the feed of aqueous wastes and changed the total feed rate for all wastes. The Appeals Board disagreed, concluding that the letters simply implemented the existing terms of the WTI permit. We agree, finding nothing to suggest that Congress intended the Agency's actions challenged by petitioners to fall within the meaning of "issuing, denying, modifying, or revoking a[ ] permit." *Id.; see ThermalKEM, Inc. v. EPA,* 25 F.3d 1233, 1237 (3d Cir.1994).

The WTI permit contained conditions providing for post-trial burn operations, which included the DRE requirement and provided that limits would be determined from actual emissions at the trial burn.[6] The Regional

to terminate the permit, and this appeal is a prerequisite to judicial review of the Regional Administrator's decision, *see id.,* Greenpeace did not seek review of this decision. The district court issued an order enjoining WTI's post-trial burn operations, but the Court of Appeals for the Sixth Circuit stayed the injunction and subsequently dismissed the suit as an improper collateral challenge. *Greenpeace,* 9 F.3d at 1181.

5. Two weeks later, WTI submitted additional trial burn data to the Regional Administrator revealing that emission rates for mercury exceeded the emission rates established in the permit. By letter of May 7, 1993, the Regional Administra-

tor's office provided the numerical feed rate and emission level that would ensure WTI's compliance with the permit, and it advised that WTI would have to reduce the feed rate to the incinerator.

6. Condition C.4 of the incinerator permit requires that WTI achieve "at all times" 99.99% destruction and removal efficiency for each principal organic hazardous constituent tested, *see also* 40 C.F.R. §§ 264.342, 264.343(a), and that it not emit pollutants at levels harmful to human health and the environment. It further provides. that the limits to ensure safety would be determined from actual emission factors measured at

Administrator's letter of January 8, 1993, incorporated into the permit the additional requirement of certified compliance with carbon monoxide and particulate emissions limits prior to proceeding to post-trial burn operations. As a result, as the Appeals Board Decision concluded, the April 6th letter confirming WTI's compliance with the January 8th conditions did not authorize post-trial burn operations, but rather implemented the WTI permit issued in 1985, as amended in 1992 and supplemented on January 8, 1993. Appeals Board Decision at *13. Similarly, as the Appeals Board concluded, the April 12th letter was not a permit modification because Condition C.13(d) of the WTI permit specifically contemplated that additional restrictions on waste feed might be imposed based on the results of the trial burn. While the April 12th letter added specificity to the permit, the original permit contemplated clarifications during the various stages. *Id.* at *21.

Neither the RCRA nor its accompanying regulations require the Agency to issue a new permit or make a permit modification to govern an incinerator's post-trial burn operations. Whereas the regulations explicitly require the Agency Administrator to follow the notice-and-comment procedures of 40 C.F.R. § 270.42 before setting the *final* permit conditions for the incinerator's operations, *see id.* § 270.62(b)(10), they impose no similar burden for the conditions that govern during the post-trial-burn period, and no suggestion that a permit may not allow mid-course corrections within the post-trial-burn period. *Id.* § 270.62(c). Rather, the regulations anticipate that the permit itself will govern post-trial burn operations and that the incinerator need only comply with permit condi-

tions in order to proceed from trial burn to post-trial burn operations.[7] *Id.* The WTI permit authorized post-trial burn operations and specified the conditions of operation should WTI's incinerator either comply with emission limits or fail to achieve emission limits during the trial burn. Condition C.13(d) of WTI's permit provides that if the incinerator failed to meet designated emission rates during the trial burn, it must, upon the Agency's request, cease feeding hazardous waste into the incinerator.[8] *See supra* note 6; *see also Greenpeace,* 9 F.3d at 1177. WTI's incinerator did, in fact, fail to meet these rates during the trial burn, and the April 12th letter implemented Condition C.13 of the permit. As a result, there is nothing to suggest that the April 6th and April 12th letters did more than implement existing permit conditions in a manner contemplated by the WTI permit.

Greenpeace contends, however, that because the regulations define a permit as "an authorization, license, or equivalent control document issued by EPA ... to implement" the RCRA requirements, 40 C.F.R. § 270.2, the April 6th letter, which, in its view, authorized commencement of post-trial burn operations at the WTI incinerator, must be a permit. Greenpeace maintains that WTI "[c]learly had no authorization for post-trial burn until [the emission] standards were met and WTI's certification to EPA was accepted." However, for purposes of judicial review, this argument distorts the permitting process, which contemplates several stages. It would mischaracterize the April 6th letter to view it as authorizing post-trial burn operations when the permit's pre-existing conditions authorized post-trial burn operations.

the trial burn. Condition C.13 governs incinerator operations during the post-trial burn period; it authorizes the Regional Administrator to establish specific operating conditions should the incinerator exceed specified emission levels during the trial burn. Condition C.15 requires the automatic cut-off of hazardous waste feed during the post-trial burn period when emission limits are exceeded.

7. The regulatory scheme provides that any interested person may petition the Appeals Board, within 30 days after a Regional Administrator makes a final decision to issue, deny, modify, revoke and reissue, or terminate a permit under

the RCRA, for review of any condition of the permit. 40 C.F.R. §§ 124.15(a), 124.19(a). The scheme also provides that such persons may petition the Regional Administrator to modify, revoke and reissue, or terminate a permit, and that such decisions may be informally appealed to the Appeals Board, which is a prerequisite to seeking judicial review. Id. § 124.5(b).

8. The EPA Administrator may review the permit decisions by a Regional Administrator, 40 C.F.R. § 124.19, and since 1992, the Appeals Board has exercised the Administrator's review authority. 40 C.F.R. § 22.04(a); *Ciba–Geigy Corp. v. Sidamon–Eristoff,* 3 F.3d 40, 44 n. 3 (2d Cir.1993).

Greenpeace also contends that the Agency's authorization of post-trial burn operations is necessarily reviewable because other actions taken over the permit lifecycle—e.g., the initial permitting decision, the trial burn authorization, and the formal setting of final operating conditions—are subject to court review pursuant to § 7006(b). In its view, the Appeals Board's characterization of the April 6th letter arbitrarily "creates a loophole allowing EPA to abandon its mandatory duty to impose permit conditions (at all stages) that protect public health and the environment." We disagree. In seeking review of the Regional Administrator's letters of April 6th and April 12th, petitioners are challenging the conditions governing post-trial burn operations at the WTI incinerator. Those conditions were not adopted in the contested letters but rather are in WTI's permit as amended through January 8, 1993. As the Appeals Board Decision observed, "[t]he Region's revisions are part of a process contemplated in the original permit by which the general terms of the original permit are made more specific." *Id.* at *21–22 (citation omitted). Consequently, because WTI's permit included conditions that specifically authorized post-trial burn operations and contemplated that additional restrictions on waste feed might be imposed based on the results of the trial burn, and these permit conditions were subject to review when adopted, the April 6th and April 12th letters do not fall within the scope of reviewable actions under § 7006(b).

 The City of Pittsburgh contends that the April 12th letter modified WTI's permit because it prohibited the feed of aqueous waste and limited the total feed rate to the incinerator. Again, as noted, these terms are no more than new restrictions implementing a pre-existing condition of WTI's permit. The City of Pittsburgh insists that formal public notice and comment provided the only mechanism by which the agency could impose additional restrictions to WTI's permit, citing 40 C.F.R. § 270.42. Because the Administrator was not setting the *final* permit conditions, however, this provision would apply only when the permittee—here WTI—seeks such a modification by contrast with the situation at hand in which the Agency imposes restrictions under the permit conditions. The City of Pittsburgh also notes that under the permit, WTI could petition for a permit modification and a new trial burn in the event that it failed to meet emission requirements during the first trial burn. As the Agency points out, this provision in the permit simply provides the means by which WTI could obtain permission to conduct a second trial burn; it provides no basis to support the City of Pittsburgh's contention that the Regional Administrator was barred from imposing additional restrictions based on trial burn results.[9]

 Finally, the City of Pittsburgh seeks review of the Appeals Board Decision rejecting the contention that the April 12th letter modified WTI's permit. It maintains that the Decision is properly before the court as the final agency action on the permitting issues raised in the administrative appeal. However, like the letters, the Decision does not fall within one of the categories specified in § 7006(b) as it did not and cannot be deemed to have issued or modified the permit. *See ThermalKEM, Inc.*, 25 F.3d at 1237.

Accordingly, because both letters simply implemented the WTI permit and the Appeals Board Decision itself cannot be deemed to have issued or modified the permit, the court lacks jurisdiction, and we dismiss the petitions.

---

**9.** The City of Pittsburgh's contention that the Agency's letter of May 7, 1993, regarding mercury emissions, modified WTI's permit and thus should be reviewable by the Appeals Board and the court, is not properly before the court. While the Agency maintains that the letter was not a final agency action and thus not reviewable, even if the May 7th letter was a permit modification subject to review under RCRA § 7006(b), the City of Pittsburgh did not seek review of this letter by the Appeals Board, review by which is a prerequisite to judicial review of final agency action. 40 C.F.R. § 124.19(e). The City of Pittsburgh's appeal of the Appeals Board Decision is limited to whether the board erred in denying review of the April 12th letter.